VINCENZO, APPELLEE, v. NEWHART, APPELLANT.

[Cite as Vincenzo v. Newhart, 7 Ohio App. 2d 97.]

(No. 595—Decided August 2, 1966.)

Mr. Gordon L. Nazor, for appellee.

Mr. Carey S. Sheldon and Mr. James C. Warren, for appellant.

JOHNSON, P. J.  In October 1956, plaintiff was involved in an automobile accident with the defendant, in which plaintiff sustained personal injuries to his back. A petition was filed May 26, 1958, setting out the injuries and negligence of the defendant.  On January 30, 1960, plaintiff fell, allegedly as a result of the weakened condition resulting from the accident of 1956, and sustained further injuries.  On February 5, 1965, an amended petition was filed setting out the injuries and negligence of the defendant as they applied to the accident of 1956 as well as the injuries sustained as a result of the fall occurring in 1960.  As a result of his fall in 1960, plaintiff was hospitalized for a period of two days and received treatment from

his personal physician, a Dr. Nolan. On trial, plaintiff called Dr. Alfred A. DeCato and Dr. Paul M. Kohn, who testified concerning the conditions of his back, neither doctor being the plaintiff's attending doctor. Plaintiff rested his case without calling Dr. Nolan, his attending physician.

Defendant subpoenaed Dr. Nolan to appear as a witness on his behalf. No other doctor was called by the defense. Outside of the presence of the jury, the plaintiff motioned the trial court to deny the defendant the right to call Dr. Nolan since he was the attending physician and the privilege afforded by the provisions of Section 2317.02, Revised Code, had not been waived. A lengthy colloquy transpired in the court's chambers wherein the court determined that the plaintiff in his direct testimony had not waived his right to the privileges afforded by the statute. Thereupon, the court concluded there was one question to be determined by the court, as disclosed by the record, "which leaves, apparently, the only issue before the court whether or not defense may call Dr. Nolan to testify on matters not within the realm of privileged communication." The trial court made the following ruling on the plaintiff's motion:

"On the final issue of whether or not this court would permit the defense to call Dr. Nolan as an expert witness to testify on purely hypothetical matters or matters not falling within the privileged communication, it would appear to this court that to allow this doctor to be compelled to testify at the call of the defense would have detrimental implications to the jury in that they would be utilizing the plaintiff's doctor. Certainly, even though there would be a restriction as to the type of testimony that would be allowed, namely, nothing falling within the privilege but matters that fall within the realm of expert testimony, it would appear to open the door for the purpose of allowing one's doctor to be called for one purpose but not another, would provide an escape hatch under the privileged communication statute, and would be relaxing the strict position of Ohio intended to safeguard these professional relationships. The court in making this determination is well aware of the Supreme Court's ruling in *Strizak* v. *Industrial Commission*, 159 Ohio St. 475. The court feels the instant case can be distinguished from the *Strizak* v. *Industrial Commission* case because on a close review and analysis of the circumstances surrounding this

case and the reason for calling Dr. Nolan by the defense, it would seem to be an undue obligation upon plaintiff to call all their medical doctors or otherwise suffer the consequences of the adverse implications drawn by a jury upon such treating physicians being called by the defense. Therefore, I will sustain plaintiff's position and I will instruct counsel for the defense to refrain from calling Dr. Nolan as a witness based on the ruling of this court. To rule otherwise would seem to make a farce out of the privileged communication statute."

Counsel for the defendant, in opposition to the court's ruling, stated:

"Let the record also show that counsel for the defense feels that it cannot even call Dr. Nolan's name and ask him to walk to the stand under pain of either contempt or mistrial and it is only for that reason that we do not call him."

The question with which we are confronted in this case is whether the privileges afforded by Section 2317.02, Revised Code, are so broad as to preclude the calling of an attending physician *as a witness* where the privilege has not been waived by the patient.

The typical case wherein the question of physician-patient privilege arises concerns itself with a limitation imposed on the testimony of an attending physician *after* he has taken the stand as a witness. These cases have generally been decided on the basis of whether the plaintiff on voluntary direct examination, as distinguished from involuntary cross-examination, did in fact waive the privilege he later seeks to invoke. If the patient was found to have waived, it has been universally held that the attending physician could testify as to privileged matters; if not, the doctor was precluded from giving any testimony covered by the privilege. See *Black* v. *Port, Inc.*, 120 Ohio App. 369; *Harpman* v. *Devine, Recr.*, 133 Ohio St. 1; *Baker* v. *Industrial Commission*, 135 Ohio St. 491; 97 Corpus Juris Secundum, Witnesses, Section 295.

Section 2317.02, Revised Code, provides:

"The following persons shall not testify in certain respects:

"(A) * * * a physician, concerning a *communication* made to him by his patient in that relation, or his *advice* to his patient, but the * * * physician may testify by express consent of the * * * patient * * *; and if the * * * patient voluntarily testi-

fies, the * * * physician may be compelled to testify on the same subject;

" * * *." (Emphasis added.)

At the outset, it is to be noted that the language of the statute is not couched in such terms as to make an attending physician an incompetent witness, but merely says that he shall not testify in certain respects, namely as to communications and advice.

Diligent search has uncovered no fact situation exactly analogous to the one at bar.

In *Willig* v. *Prudential Ins. Co.*, 71 Ohio App. 255, the following pertinent facts are found: Two physicians who had treated the plaintiff for three years immediately preceding his application for insurance were called by the defendant. The trial court, over the objection of the plaintiff, permitted the doctors to testify that the insured had been their patient for three years, that an operation was performed, and that one of the physicians had treated her with x-ray. The court refused to permit them to testify as to the nature of the treatment, the disease from which she was suffering, or any communication made by her or their advice to her, the court concluding that these were properly the subject of privilege which had not been waived. In affirming the judgment of the trial court, Matthews, P. J., concluded at page 256:

"Does this statute preclude the physician from testifying that the relation of physician and patient existed at a specified time? It seems to us clear that it does not. Until the relation is disclosed, there is no privilege to be protected. The mere fact that the witness is a physician does not render him incompetent to testify either as to his advice or as to the person's physical condition. The court must find that the confidential relationship existed before it would be justified in ruling that the physician could not testify, *and the court could only so find after hearing evidence on the subject in an open trial.* The statute does not draw the cloak of secrecy over the fact that the relationship existed, but only over the interchange within the relationship." (Emphasis added.)

Though the two attending physicians were held to be within the bounds of the privilege afforded by the statute, many of the questions propounded were outside the scope of *communi-*

*cations* and *advice* to which the privilege is limited, and they were held to be competent witnesses as to these questions.

It appears to us that the danger inherent in the defendant's contention that the doctor cannot even take the witness stand where the privilege is claimed is that for all practical purposes no attending physician would be a proper defense witness in any trial where the privilege is asserted. This would seem to be a considerable broadening of the legislative intent, which is that the attending physician be precluded only from testifying in "certain respects."

On the other hand, plaintiff asserts, and the trial court held, that any other conclusion would put the plaintiff in the position (having chosen not to call the attending physician in his case in chief) of appearing to hide some evidence prejudicial to his case by being forced to assert his privilege only after the physician has been called as a witness. Though it be conceded that this uncomfortable dilemma might well arise, yet to allow the plaintiff to so control the defendant's case would effectively deny to the defendant competent testimony of plaintiff's attending physician concerning matters outside the scope of the privilege. This is especially so in the instant case, where but one medical witness was called by the defendant.

As was said by the Supreme Court of Ohio in *Strizak* v. *Industrial Commission,* 159 Ohio St. 475, at page 479:

"The precise question with which we are confronted in the present case is the admissibility and competency of certain testimony of Dr. Covert, which testimony was confined to answering hypothetical questions *not* embracing matters confided to him by his patient or information obtained by him from his physical examination of such patient.

"This court has not decided that question, but other courts have and their holdings are in accord with the statement appearing in 70 Corpus Juris, 449, Witnesses, Section 605, which is to the effect that a physician who has treated an injured person professionally is not thereby disqualified or precluded from giving expert testimony in response to proper hypothetical questions, provided that in answering the questions he disregards what he learned and observed while attending the patient and his own opinion formed therefrom." (Emphasis added.)

The question cannot be disposed of solely on the ground of

possible hypothetical questions which might have been propounded to Dr. Nolan under the rule of the *Strizak case, supra.*

One can conceive of many competent questions which could be propounded to an attending physician, which would fall outside the limitation relative to communication and advice covered by the statute.

Such questions directed to a witness and the admissibility of the answers thereto could only be ruled upon in the ordinary course of a trial, once the witness had taken the oath and been seated.

Broad discretion is vested in the trial court to guard against unfair innuendoes which might arise as a result of trial strategy. And if, as is sometimes the case, such events do occur in the course of a trial, the jury can be firmly instructed to disregard them.

But to preclude an otherwise competent witness from even taking the stand because of the fear of such eventuality is clearly an abuse of discretion and gives far more latitude to the statute than was the legislative intent.

Defendant asserts that, since no proffer was made of the testimony to be produced by the attending physician, the error assigned is not well taken.

With this contention we cannot agree, on authority of *Torrance* v. *Torrance*, 147 Ohio St. 169, paragraph one of the syllabus:

"Where a court rules that a witness, through whom competent evidence might otherwise have been produced, is incompetent to testify, no proffer of testimony is necessary to challenge such ruling of the court."

See, also, 3 Ohio Jurisprudence 2d 298, Appellate Review, Section 387.

The judgment of the trial court is reversed, and the cause is remanded for a new trial in accordance with this opinion.

*Judgment reversed.*

Jones and Lynch, JJ., concur.