George E. MATTSON, Plaintiff,

v.

The PENNSYLVANIA RAILROAD COMPANY, Defendant.

Civ. A. No. C 64–636.

United States District Court
N. D. Ohio, E. D.

Sept. 12, 1967.

Curt E. Stern, of Sindell, Sindell, Bourne & Markus, Cleveland, Ohio, for plaintiff.

Eben Crawford, of Squire, Sanders & Dempsey, Cleveland, Ohio, for defendant.

WILLIAM K. THOMAS, District Judge.

This opinion rendered September 12, 1967 and an earlier order of the court (appearing hereafter) are decisions which deal with defendant's efforts to seek discovery of plaintiff's medical evidence. Bringing his action under the Federal Employer's Liability Act, 45 U.S.C. § 51 (1964) plaintiff, an employee of the defendant's railroad, alleged that he was riding in the caboose of defendant's train when the caboose derailed,

turned over, and fell down an embankment. Among his claims of injury plaintiff claims injury to the internal organs of his chest, including his heart. It is his medical evidence concerning claim of traumatic cardiac damage which is principally sought by the defendant's discovery.

This matter comes on for hearing and determination in connection with a motion of the Defendant to compel Dr. Claude S. Beck to answer a question put to him during the Defendant's deposition of Dr. Beck. The matter arises by reason of a prior order of this Court of March the 27th, 1967. At that time the Court ordered Plaintiff to inform the Court as to whether any one or more of certain named doctors would not be called to testify at the trial of this case. Thereafter Plaintiff's counsel submitted a list of three names, namely, Drs. Kessler, Woods and Martin, omitting the name of Dr. Beck. Under the Court's order this omission waived the physician-patient privilege as to Dr. Beck.

It now appears that Defendant, in accordance with the Court's order, has undertaken to interrogate Dr. Beck. Without objection, Dr. Beck has been permitted to testify with reference to certain findings and as to his care and treatment of the Plaintiff, George E. Matson. However, in the course of the deposition the following question was put to Dr. Beck:

"Doctor, based on the history the Plaintiff gave you and his complaints and your firsthand examination and treatment of the Plaintiff and your extensive experience with people suffering from coronary artery disease, do you have an opinion, based on reasonable medical certainty, as to whether or not the trauma and shock Plaintiff sustained during the train derailment accident on March 6, 1963, proximately caused or aggravated the coronary heart disease which required the operation you performed in July of 1963?"

At the request of Plaintiff's counsel, Dr. Beck declined to answer the question.

Within the ruling previously made, no question of physician-patient privilege as a ground for Plaintiff's objection to the question can be considered. Moreover, the Plaintiff, as the Court sees it, may not now assert either the attorney-client privilege or any claim of work-product privilege as a ground of objection. The witness is one of the attending doctors of the Plaintiff.

Furthermore, the Plaintiff's suggestion that the question is improperly phrased does not appear to be a basis for the objection. If the question is permitted, the Plaintiff is fully protected by having asserted an objection to any question, if improper. At a subsequent time, before trial, if the doctor's deposition is transcribed and filed, or during trial if any effort is made to use the question and answer in an interrogation of Dr. Beck, should he be called as a witness, there appears to be sufficient time and opportunity to rule on the propriety of the question.

The objection, however, does raise a further question that does seem important to the Court. This question goes to the fairness of the question at this juncture. In the hearing held this afternoon the Court has asked counsel for the Defendant his intentions as to the Defendant's engaging of an expert. Counsel for the Defendant has frankly and candidly informed the Court that the Defendant does intend to engage a medical expert, who presumably would be asked to examine the Plaintiff and thereafter at the trial possibly called to give his expert opinion with reference both to the condition of the Plaintiff and as to any causal connection between the alleged negligent act and the physical condition and illness of the Plaintiff.

It is true that in Ohio the Supreme Court has apparently taken the position that a doctor may be called at trial and required to give an expert opinion, even though not on a voluntary

basis. In Strizak v. Industrial Commission, 159 Ohio St. 475, 112 N.E.2d 537 (1953), a workmen's compensation suit, the plaintiff's attending doctor was called as a witness by the defendant. The Supreme Court, in substance, held that though it was not proper to interrogate the witness as to his care and treatment of the plaintiff, it was proper to put a question that called for an expert opinion. The Strizak case has two differences compared with our present case. First, the matter arose at trial; secondly, there had been no physician-patient privilege waiver. Strizak has been followed in the more recent case of Vincenzo v. Newhart, which appears in 7 Ohio App.2d 97, 219 N.E.2d 212, 36 Ohio O.2d 213 (1966), and 11 Ohio St.2d 63, 227 N.E.2d 627, decided June 28th, 1967, by the Supreme Court of Ohio.

The rule which seems applicable here arises out of the discretion which the trial judge has, it seems to me, in connection with discovery proceedings. This discretion has been noted as follows by Moore's Federal Practice, Second Edition, page 1529, heading "Discovery From Adverse Party's Expert," Section 26.24:

"The fact that a party's expert might be compelled to testify at the trial, however, does not mean that the opposing party has a right to compel his testimony at the pre-trial stage of the case. It is an oversimplification to say that discovery simply advances the stage at which disclosure can be compelled. The scope of discovery before trial is far broader than the scope of testimony at the trial, but at the same time the court has a good deal of discretion to limit or otherwise restrict the scope of discovery."

And in a very long and exhaustive law review article, entitled "Discovery of Expert Information," which is printed in the Modern Practice Commentator, May 1963, it is interesting to note that the author, Professor Friedenthal, towards the end of his article, has this to say, page 38:

"A decision must be made, then, whether the needs of cross-examination outweigh the unfairness which could result. As already pointed out, the benefits to cross-examination in cases involving expert witnesses are substantial, whereas the unfairness, if it does exist in a particular case in terms of time, effort, and money, is often no worse in the case where an attorney seeks information from an adverse party's expert than it is where he seeks it from an eyewitness found by the adverse party after long and costly search. The ultimate requirement that judicial decisions be based on the true facts overcomes any detriment which might be suffered by the adversary system. Additionally, some measures may be taken to help eliminate inequities which might otherwise arise."

And the author goes on to point out:

"In the case of medical reports, Federal Rule 35, as well as its counterparts in the various states, already has a built-in provision for the exchange of information. There is no reason whatsoever why such a procedure cannot be employed with respect to other types of expert information as well, at least for the limited purpose of cross-examination."

Considering all of the factors which I think are relevant, it seems to me that the only ground upon which this objection can be advanced here is on the ground of unfairness; and it is true that at this stage, if I were to compel the answer and then not in any way condition this upon a like right on the part of the Plaintiff to examine the Defendant's expert, unfairness could certainly result. Accordingly, it will be the order of this Court that the motion to compel the

answer is granted, subject, however, to these conditions:

1. The further examination of Dr. Beck is stayed until such time, if at all, that the Defendant engages an expert and this expert is in a position to give his expert opinions in the same general area as those in which Dr. Beck is being asked by Defendant's counsel.

2. The previous order of the Court with reference to the payment of any charges for services would necessarily apply to Dr. Beck's further testimony; contrariwise, if the Plaintiff deposes Defendant's expert, then Plaintiff would be required to compensate him for the actual time of any deposition that may ensue.

3. If there are other experts that are engaged, or if any of the witnesses are likely to give expert opinions, then whatever has been ruled here with reference to Dr. Beck and the proposed expert of the Defendant would apply equally.

Note exceptions on the part of the Plaintiff and on the part, for that matter, of the Defendant as well, to the ruling of the Court.

### ORDER

■ Upon consideration of defendant's motion to obtain hospital and physicians' records under Rule 34,

(1) IT IS ORDERED that Subsections (1) and (2) of said motion are granted and plaintiff is directed to furnish to defendant signed authorizations, in the form of Exhibits A and B to said motion, for the inspection and copying of all medical records pertaining to plaintiff's heart or cardiovascular system in the possession, custody or control of:

(1) The Veterans' Administration;

(2) Geneva Memorial Hospital, Geneva, Ohio;

provided original electrocardiogram graphs or tapes may be copied, but may not be removed from the custody of the hospital.

■ (2) IT IS FURTHER ORDERED that the defendant furnish to plaintiff copies of the reports of Drs. Day and Brown and any other of plaintiff's medical records presently in defendant's possession made subsequent to the time when plaintiff returned to defendant's employ after World War II.

■ (3) IT IS FURTHER ORDERED that Subsections (3) to (6) inclusive of said motion are denied. It is, however, ORDERED that plaintiff will be deemed to have waived the physician-patient privilege as to the subject matter of this action with respect to the doctors named in said Subsections of said motion, being Drs. Beck, Kessler, Woods, and Martin, unless within fifteen (15) days from the date of this ruling, plaintiff in writing informs the court that as to any one or more of said doctors a waiver of said privilege is not intended, and he will not call such doctor as a witness in the trial of this cause. [See Greene v. Sears, Roebuck & Company, 40 F.R.D. 14 (N.D. Ohio 1966) and Mariner v. Great Lakes Dredge & Dock Co., 202 F.Supp. 430 (N.D. Ohio 1962).]

(4) IT IS FURTHER ORDERED That, in accordance with the Federal Rules of Civil Procedure, defendant may proceed to take the deposition of any doctor not so listed by the plaintiff (a witness who will be called at the trial.) Any charge for time and appearance of any doctor so deposed by defendant shall be the obligation of the defendant, and the doctor may bill the defendant for his time and appearance.

(5) Not later than ten (10) days from the date of this order the defendant is required to furnish the reports and records described and identified in Paragraph (2) of this order.