HOLLIS, Exrx., Appellee,

v.

FINGER et al., Appellants.

[Cite as *Hollis v. Finger* (1990), 69 Ohio App.3d 286.]

Court of Appeals of Ohio,
Scioto County.

No. 1846.

Decided Sept. 5, 1990.

288

*Miller, Searl & Fitch* and *R. Alan Lemons,* for appellants.

*John W. Thatcher,* for appellee.

STEPHENSON, Judge.

This is an appeal from a judgment entered by the Scioto County Court of Common Pleas, Probate Division, in the context of a will contest proceeding, granting the motion of Judith Ann Hollis, plaintiff below and appellee herein, for sanctions against Donald Finger and Joyce Louise Moore, defendants below and appellants herein, and further ordering that the deposition of Ramon O. Malaya, M.D., proceed and that Dr. Malaya answer questions under oath relative to the mental condition of the decedent.[1]

Appellants assign the following errors:

"(1) The court erred in ordering the deposition of decedent's treating physician in the absence of a waiver of the physician-patient privilege.

"(2) The court erred in granting sanctions against defendant-appellants [*sic* ].

---

1. Appellee and appellant Joyce Louise Moore are nieces of the decedent whereas appellant Donald Finger is a nephew of the decedent.

"(3) The Finding and Entry of Judgment of the Common Pleas Court of Scioto County, Ohio, Probate Division is contrary to law."

On April 7, 1973, Carl Edward Wallace executed a will which left his marital domicile to appellee in the event that his wife predeceased him. The April 7, 1973 will further provided that appellee would be the executrix of his estate should his wife predecease him. On March 13, 1987, Carl Edward Wallace executed a second will which designated appellants as the persons to receive a testamentary disposition of his real and personal property. The March 13, 1987 will named appellant Joyce Louise Moore as executrix of his estate. Carl Edward Wallace subsequently died, and appellants filed an application to admit the March 13, 1987 will to probate. On October 30, 1987, the trial court admitted this will to probate.

On December 9, 1987, appellee filed a complaint in the court below which averred that the decedent lacked the mental capacity to execute the March 13, 1987 will and that, consequently, the decedent's April 7, 1973 will was his last effective will. Appellee's complaint prayed that the March 13, 1987 will of the decedent be held not to be his last will and testament and that it be set aside. On January 8, 1988, appellants filed an answer which admitted that they were beneficiaries under the decedent's March 13, 1987 will and that appellant Joyce Louise Moore was the executrix of the decedent's estate. Appellants' answer denied that the decedent lacked the requisite mental capacity to execute his March 13, 1987 will and that this will was therefore ineffective.

On February 25, 1988, appellee filed a response to appellants' request for production of documents, which included a February 20, 1987 medical statement of Ramon O. Malaya, M.D., wherein Dr. Malaya stated that the decedent was "not physically and mentally able to take care of his own affairs due to chronic organic brain syndrome." On February 14, 1989, appellee filed a notice that she would take the depositions of several individuals, including Dr. Malaya.

On March 23, 1989, appellee attempted to take the deposition of Dr. Malaya at the physician's office, and the following was transcribed:

"MR. THATCHER: We are here at the office of Doctor Ramon Malaya in Portsmouth, Ohio scheduled on a notice for the taking of deposition of Doctor Ramon Malaya relative to his file and treatment of Carl E. Wallace, deceased.

"Before the deposition was begun, there was an objection by the attorney for the executor, R. Alan Lemons, specifically not waving [sic] his privilege or his client's privilege to those medical records,. and following a conversation with his attorney, Doctor Malaya then refused to testify.

"This was done over objection of the attorney for plaintiff for the reason that this matter has been set for approximately three weeks, and no motion for a protective order was filed with the court.

"Anything else you wish to add?

"MR. LEMONS: No."

On March 24, 1989, appellee filed a motion requesting $300 in sanctions from appellants for expenses incurred in the Dr. Malaya deposition. Appellee's motion additionally requested an order directing Dr. Malaya to submit to and answer questions under oath relative to the mental condition of the decedent. On September 18, 1989, the trial court issued a "FINDING AND ENTRY" which ordered that appellants pay $300 in sanctions for reasonable expenses, i.e., doctor and court reporter fees, incurred by appellee in setting the deposition of Dr. Malaya. The trial court further ordered that the deposition of Dr. Malaya proceed and that Dr. Malaya submit to and answer questions under oath relative to the decedent's mental condition. Appellant filed a timely appeal from the September 18, 1989 entry.

Prior to our consideration of the merits of this appeal, a threshold determination is required as to whether the September 18, 1989 entry ordering sanctions and compelling a physician's deposition testimony constituted a final appealable order. Section 3(B)(2), Article IV of the Ohio Constitution provides that "[c]ourts of appeals shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district * * *."

Every final order may be reviewed on appeal, R.C. 2505.03. R.C. 2505.02 defines three types of final orders: (1) an order affecting a substantial right in an action which in effect determines the action and prevents a judgment; (2) an order affecting a substantial right made in a special proceeding or made upon summary application after judgment; or (3) on order vacating or setting aside a judgment or granting a new trial. *Chef Italiano Corp. v. Kent State Univ.* (1989), 44 Ohio St.3d 86, 87–88, 541 N.E.2d 64, 66–67.

In order to constitute a final order pursuant to R.C. 2505.02 in the case at bar, the entry must have (1) affected a substantial right and (2) have been made in a special proceeding. As to whether an order was made in a special proceeding, the Supreme Court of Ohio has set forth a "balancing test" which weighs the harm to the prompt and orderly disposition of litigation and the consequent waste of judicial resources resulting from the allowance of an appeal with the need for immediate review because appeal after final judgment is not practicable. *Amato v. General Motors Corp.* (1981), 67 Ohio St.2d 253, at 258, 21 O.O.3d 158, at 161, 423 N.E.2d 452, at 456;

*Guccione v. Hustler Magazine, Inc.* (1985), 17 Ohio St.3d 88, 17 OBR 211, 477 N.E.2d 630; *Foor v. Huntington Natl. Bank* (1986), 27 Ohio App.3d 76, 27 OBR 95, 499 N.E.2d 1297. The basic underlying theme of *Amato* and its progeny seems to be that a party should be granted an immediate right of review where the harm resulting to that party from the order sought to be reviewed is both extreme and irreparable as a practical matter. *Galbreath v. Galbreath* (June 13, 1989), Franklin App. No. 89AP–103, unreported, at 7, 1989 WL 65389.

A discovery order is generally not considered to be a final appealable order because any harm from erroneous discovery has been held to be correctable upon appeal. *Doe v. University of Cincinnati* (1988), 42 Ohio App.3d 227, 538 N.E.2d 419; *Kennedy v. Chalfin* (1974), 38 Ohio St.2d 85, 67 O.O.2d 90, 310 N.E.2d 233. However, there is an exception to the general rule where the harm caused by the order cannot be corrected upon appeal. *State v. Port Clinton Fisheries, Inc.* (1984), 12 Ohio St.3d 114, 12 OBR 157, 465 N.E.2d 865. In *Humphry v. Riverside Methodist Hosp.* (1986), 22 Ohio St.3d 94, 22 OBR 129, 488 N.E.2d 877, the Ohio Supreme Court held that a trial court order compelling disclosure of information subject to the physician-patient privilege set forth in R.C. 2317.02(B) was a final appealable order, *i.e.*, affected a substantial right and was made in a special proceeding, because "[o]nce the information is divulged, the damage is done, and cannot be remedied by subsequent review of the decision after the final judgment is entered." See *Storey v. Russolillo* (Feb. 7, 1989), Franklin App. No. 88AP–789, unreported, 1989 WL 10351 (discovery order in will contest proceeding compelling disclosure of medical records claimed to be a privileged communication between physician and decedent patient was a final appealable order), and *Brown v. Yothers* (1988), 56 Ohio App.3d 29, 564 N.E.2d 714, both cited by appellants on appeal; see, also, *Hlavin v. W.E. Plechaty Co.* (1971), 28 Ohio App.2d 43, 44, 57 O.O.2d 69, 70, 274 N.E.2d 570, 571, where it was held that an order awarding expenses and attorney fees, as sanctions against persons who unjustifiably resist discovery in civil actions, is a final appealable order under R.C. 2505.02. Pursuant to *Humphry, Storey,* and *Hlavin, supra,* we hold that the trial court's entry herein, ordering sanctions and compelling the deposition testimony of a physician over appellants' objection to any testimony subject to the R.C. 2317.02(B) physician-patient privilege, was a final appealable order pursuant to R.C. 2505.02 and, hence, now consider the merits of the instant appeal.

Appellants' first assignment of error asserts that the trial court erred in ordering the deposition of decedent's treating physician in the absence of a waiver of the physician-patient privilege, appellants' second assignment of

error asserts that the trial court erred in granting sanctions against appellants, and appellants' third assignment of error asserts that the trial court's judgment is contrary to law. In that appellants' first, second, and third assignments of error are not separately argued and raise similar issues of law and fact, they will be considered jointly.

Appellants essentially argue that the order compelling the treating physician's deposition testimony and imposing sanctions of $300 on appellants was erroneous where appellant Joyce Louise Moore, the executrix of the decedent's estate, properly asserted an objection prior to the deposition of Dr. Malaya regarding the disclosure of any privileged information pursuant to R.C. 2317.02(B). Appellee contends that appellants' filing of the application to probate the decedent's March 13, 1987 will waived the statutory privilege pursuant to R.C. 2317.02(B)(1)(c) and that the physician-patient privilege did not preclude the discovery of information related to the mental capacity of the decedent to make the March 13, 1987 will.

 The physician-patient privilege found in R.C. 2317.02(B) has a specific purpose: to create an atmosphere of confidentiality, which theoretically will encourage the patient to be completely candid with his or her physician, thus enabling more complete treatment. *Ohio State Medical Bd. v. Miller* (1989), 44 Ohio St.3d 136, 139, 541 N.E.2d 602, 605. Therefore, the purpose of the privilege is to encourage patients to make a full disclosure of their symptoms and conditions to their physicians without fear that such matters will later become public. *State v. Antill* (1964), 176 Ohio St. 61, 64–65, 26 O.O.2d 366, 368, 197 N.E.2d 548, 551–552.

 There existed no physician-patient privilege at common law. McCormick, Evidence (3 Ed. Lawyer's Ed.1984) 243, Section 98; *In re Loewenthal* (1956), 101 Ohio App. 355, 357, 1 O.O.2d 302, 303, 134 N.E.2d 158, 159–160. Since the privilege is in derogation of the common law, it must be strictly construed against the party seeking to assert it. *Miller, supra,* 44 Ohio St.3d at 140, 541 N.E.2d at 605; *Weis v. Weis* (1947), 147 Ohio St. 416, 34 O.O. 350, 72 N.E.2d 245. Consequently, despite the laudable purpose and goal to be achieved by the physician-patient privilege, the privilege may not be invoked automatically in all circumstances. *Miller, op. cit.*

Both parties on appeal cite the current version of R.C. 2317.02, which provides, in pertinent part, as follows:

"The following persons shall not testify in certain respects:

" * * *

"(B)(1) A physician concerning a communication made to him by his patient in that relation or his advice to his patient, except as otherwise provided in

this division and division (B)(2) of this section, and except that, if the patient is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the physician may be compelled to testify on the same subject.

"*The testimonial privilege under this division is waived, and a physician may testify or may be compelled to testify in a civil action, in accordance with the discovery provisions of the Rules of Civil Procedure in connection with a civil action,* or in connection with a claim under Chapter 4123. of the Revised Code, under the following circumstances:

"(a) If the patient or the guardian or other legal representative of the patient gives express consent;

"(b) If the patient is deceased, the spouse of the patient or his executor or administrator gives express consent;

"(c) *If* a medical claim, dental claim, chiropractic claim, or optometric claim, as defined in section 2305.11 of the Revised Code, an action for wrongful death, *any other type of civil action,* or a claim under Chapter 4123. of the Revised Code *is filed by the patient, the personal representative of the patient if deceased or of his estate, or his guardian or other legal representative.*" (Emphasis added.)

The current statutory version of the R.C. 2317.02(B) physician-patient privilege reflects a major departure from the prior statutory version, with the amendment provided by Am.Sub.H.B. No. 1 (142 Ohio Laws, Part I, 1661) (the Ohio Tort Reform Act of 1987), continuing the general prohibition against a physician testifying in court or otherwise as to a communication made to him by a patient, or his advice to a patient, in the physician-patient relationship, but revising the form and substance of the physician-patient testimonial privilege statute insofar as it related to "waiver" of the privilege. Legislative Service Commission Note to Am.Sub.H.B. 1, Baldwin's Ohio Legislative Service (1987), at 5–843. The compulsory waiver of the physician-patient privilege by the filing of "any * * * type of civil action" marked the most dramatic change in R.C. 2317.02 resulting from the Ohio Tort Reform Act of 1987. Wade, the Ohio Physician–Patient Privilege: Modified, Revised, and Defined (1989), 49 Ohio St.L.J. 1147, 1156. The rationale for expanding the compulsory waiver of the physician-patient privilege was that if the physical condition of a patient was at issue in a case, it would be a "burlesque upon logic to allow the patient (or the patient's representative) to claim the privilege." *Id.* at 1157; see, also, 8 Wigmore, Evidence at Trials at Common Law (Rev.Ed. 1961) 855–861, Section 2389.

■ Appellee contends that since appellants filed an application to probate the decedent's March 13, 1987 will, and thereby placed the physical and mental condition of the decedent at the time he executed the will in issue, they waived their right to assert the physician-patient privilege with respect to Dr. Malaya's testimony pursuant to the current version of R.C. 2317.02(B). However, contrary to the assertions of both parties on appeal, the current version of R.C. 2317.02(B) is inapplicable herein because Section 3 of the Ohio Tort Reform Act explicitly provided that the amendments to R.C. 2317.02 "shall apply only to tort or other civil actions that are commenced on and after the effective date of this act and that are based upon claims for relief that arise on or after that date, and only to tortious conduct that occurs on or after that date." The effective date of the Act was January 5, 1988, *i.e.*, after appellants filed an application to probate the decedent's March 13, 1987 will and also following appellee's December 9, 1987 complaint contesting the decedent's March 13, 1987 will. Therefore, we must analyze the prior statutory version of R.C. 2317.02(B) in order to determine the merits of appellants' appeal.

The prior version of R.C. 2317.02 provided, in pertinent part, as follows:
"The following persons shall not testify in certain respects:
" * * *

"(B) A physician concerning a communication made to him by his patient in that relation or his advice to his patient but the physician may testify by express consent of the patient or if the patient is deceased by the express consent of the surviving spouse or the executor or administrator of the estate of such deceased patient or if the patient voluntarily testifies the physician may be compelled to testify on the same subject, or if the patient, his executor or administrator, files a medical claim, as defined in division (D)(3) of section 2305.11 of the Revised Code, such filing shall constitute a waiver of this privilege with regard to the care and treatment of which complaint is made. The provisions of this division apply to doctors of medicine, doctors of osteopathic medicine, and doctors of podiatric medicine."

It is beyond dispute that the prior statutory version of R.C. 2317.02 does not recognize a compulsory waiver of the physician-patient privilege upon the filing a civil action, *e.g.*, a personal injury action. *Wade, supra,* at 1156–1157; see, also, *State, ex rel. Lambdin, v. Brenton* (1970), 21 Ohio St.2d 21, 50 O.O.2d 44, 254 N.E.2d 681, where the Ohio Supreme Court stated as follows at 24, 50 O.O.2d at 46, 254 N.E.2d at 683:

"Only the statutory type waiver has been recognized by this court. That is an express waiver by the patient, or by the patient himself voluntarily testifying. * * *

"The rule of waiver of privilege may be adopted by legislative enactment. However, until such time as it is so adopted, a personal injury litigant does not waive the physician-patient privilege merely by filing his petition, and a court seeking to compel disclosure of personal medical records exceeds its jurisdiction."

When the words of a statute are free of ambiguity and express plainly and distinctly the sense of the lawmaking body, the courts should look no further in their efforts to interpret the intent of the General Assembly. *State v. Smorgala* (1990), 50 Ohio St.3d 222, 223, 553 N.E.2d 672, 674. Accordingly, pursuant to the unambiguous language of the pertinent version of R.C. 2317.02, appellants did not waive the right to assert the physician-patient privilege by filing an application to probate the decedent's March 13, 1987 will.

Apparently, appellee additionally argues that the physician-patient privilege is inapplicable to deposition, as opposed to trial, testimony. In *State, ex rel. Floyd, v. Court of Common Pleas* (1978), 55 Ohio St.2d 27, 9 O.O.3d 16, 377 N.E.2d 794, the Supreme Court of Ohio held that pursuant to Civ.R. 16(6), a trial court could adopt rules concerning pretrial procedure to accomplish the objective of exchanging medical reports and hospital records because that rule explicitly provides that "[t]he producing by any party of medical reports or hospital records does not constitute a waiver of the privilege granted under Section 2317.02, Revised Code." Therefore, pursuant to Civ.R. 16, a trial court may require, by rule, the disclosure of privileged information for limited purposes without requiring waiver of the privilege. *State, ex rel. Holman, v. Dayton Press, Inc.* (1984), 11 Ohio St.3d 66, 68, 11 OBR 256, 258, 463 N.E.2d 1243, 1245. However, there is no indication that the trial court in the case at bar had enacted any local rules pursuant to Civ.R. 16 regarding the production of medical reports or hospital records.

Moreover, Civ.R. 16 is inapplicable to an issue of privilege in discovery matters since Civ.R. 26, unlike Civ.R. 16, lacks a similar provision regarding waiver of the R.C. 2317.02 privilege. Finally, as the Ohio Supreme Court recently noted in *Smorgala, supra,* 50 Ohio St.3d at 225, 553 N.E.2d at 676, the law of privilege is generally considered to be substantive and therefore beyond the court's constitutional rule-making authority, *i.e.,* since the legislature has enacted a specific statutory provision in R.C. 2317.02(B) to establish and control the physician-patient privilege, there is no vacuum within which courts may proceed by common-law pronouncement. Therefore, appellants properly asserted the physician-patient privilege pursuant to the former version of R.C. 2317.02 and properly objected to Dr. Malaya's divulging any privileged information.

However, this holding does not necessarily preclude Dr. Malaya from testifying at all. Where the physician-patient privilege contained in R.C. 2317.02(B) has not been waived, a non-party treating physician may testify as an expert witness provided that in answering the questions he disregards what he learned and observed while attending the patient and his own opinion therefrom. *Moore v. Grandview Hospital* (1986), 25 Ohio St.3d 194, 25 OBR 259, 495 N.E.2d 934, at the syllabus; *Strizak v. Indus. Comm.* (1953), 159 Ohio St. 475, 50 O.O. 394, 112 N.E.2d 537, at paragraph two of the syllabus. The trial court's entry, which ordered that the deposition of Dr. Malaya proceed and that Dr. Malaya submit to and answer questions under oath "relative to the decedent's mental condition," was erroneously overly broad since questions relative to the "mental condition of the decedent" would include questions which would be properly protected by the R.C. 2317.02(B) physician-patient privilege. The trial court thus erred to that extent.

With regard to appellants' contention that the trial court erred in imposing $300 in sanctions against appellants when Dr. Malaya refused to testify at the deposition, Civ.R. 37(A) provides, in pertinent part, as follows:

"Upon reasonable notice to other parties and all persons affected thereby, *a party may move for an order compelling discovery as follows:*

"(1) *Appropriate court.* A motion for an order to a party or a deponent shall be made to the court in which the action is pending.

"(2) *Motion. If a deponent fails to answer a question propounded or submitted under Rule 30 or Rule 31,* or a party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, *the discovering party may move for an order compelling an answer or an order compelling inspection in accordance with the request.* On matters relating to a deposition on oral examination, the proponent of the question may complete or adjourn the examination before he applies for an order.

"(3) *Evasive or incomplete answer.* For purposes of this subdivision an evasive or incomplete answer is a failure to answer.

"(4) *Award of expenses of motion. If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent who opposed the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust."* (Emphasis added.)

Proper regulation of discovery practice is committed to the discretion of the trial court. *State, ex rel. Daggett, v. Gessaman* (1973), 34 Ohio St.2d 55, 63 O.O.2d 88, 295 N.E.2d 659; *Smith v. Klein* (1985), 23 Ohio App.3d 146, 151, 23 OBR 387, 393, 492 N.E.2d 852, 858. Hence, a trial court's ruling on a discovery matter will not be reversed absent an abuse of discretion. *Daggett, supra; Smith, supra.* An abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028, 1030. Sanctions are a necessary element in the scheme for liberal discovery, and a party who resists discovery without justification must pay reasonable expenses which are incurred by the party seeking discovery. *Hlavin, supra,* 28 Ohio App.2d at 45, 57 O.O.2d at 70, 274 N.E.2d at 572. In the case at bar, appellants' counsel properly objected to the disclosure of any privileged information. Furthermore, Dr. Malaya was not advised by appellants' counsel to refuse to answer any questions. Indeed, Dr. Malaya was not appellants' client nor was he their deposition witness. Rather, it was Dr. Malaya's personal attorney who advised him not to answer any questions at the deposition. Thus, the trial court abused its discretion in ordering that appellants pay $300 to appellee for reasonable expenses.

Accordingly, for the foregoing reasons, appellants' first, second, and third assignments of error are sustained, the judgment of the trial court is reversed, and the cause is remanded to the trial court for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

HOMER E. ABELE, J., concurs.

HARSHA, J., concurs separately.

HARSHA, Judge, concurring.

I concur in the judgment and opinion and write separately only because our decision, while legally correct, seems so logically deficient. Perhaps this is but another example of Dickens' conclusion that at times "the law is a ass." More appropriately, in this factual setting, the law "was a ass," as the incongruous result required by the prior version of R.C. 2317.02 has arguably been rectified by the current version of that statute.

As the principal opinion notes, appellee is not prevented by the privilege from calling Dr. Malaya as a witness on direct examination. There are many matters to which the doctor may testify, not the least of which is his expert opinion as to the decedent's competency based upon a series of hypothetical

questions, the foundation for which may be provided by lay witnesses. See *Vincenzo v. Newhart* (1966), 7 Ohio App.2d 97, 36 O.O.2d 213, 219 N.E.2d 212, affirmed (1967), 11 Ohio St.2d 63, 40 O.O.2d 67, 227 N.E.2d 627.