IN RE ADOPTION OF FOSTER ET AL.

(No. 15-84-3—Decided August 21, 1985.)

*Gregory M. Antalis,* for appellant Gary Roger Crickmore.

*Kenneth Koch,* for appellee Donald Ray Foster.

GUERNSEY, P.J. This is an appeal by Gary Roger Crickmore, hereinafter referred to as appellant or as Crickmore, from a judgment of the Probate Division, Court of Common Pleas of Van Wert County, approving and ordering the adoption of Christina Rayne Foster by Donald Ray Foster, the husband of the natural mother of this minor child. Although the adoption of another child, Gregory Adam Foster, was approved and ordered at the same time, that child was the natural child of another father and his adoption is not the subject matter of this appeal.

Crickmore assigns prejudicial error of the trial court in six particulars, summarized as follows:

1. In holding that Crickmore's consent to the adoption was not necessary due to his failure to provide support for the child within the one-year period prior to the filing of the adoption petition as prescribed by R.C. 3107.07.

2. In that the trial court's "opinion" is against the manifest weight of uncontradicted evidence that the child's mother wrongfully and by misrepresentation prevented appellant from seeing the child during the one-year period prescribed by R.C. 3107.07.

3. In that the trial court's "opinion" is against the manifest weight of uncontradicted evidence that the child's mother refused, and continued to refuse, support payments made by Crickmore to her for the support of the child before and during the statutory one-year period.

4. In that the trial court's "opinion" is against the manifest weight of the evidence due to the failure of the petitioner to show any court decree requiring Crickmore to support the child as prescribed by R.C. 3107.07.

5. In refusing to admit into evidence the testimony of Crickmore's mother, Marie Kreider, or the testimony of Dawn Crickmore, as such testimony related to conversations with the child's mother regarding potential visitation by Crickmore with the child during the one-year statutory period.

6. In that the trial court's "opinion" is against the manifest weight of uncontradicted evidence that Crickmore did visit the child for a period of time in the one-year prior to the filing of the adoption petition as also evidenced by pictures admitted into evidence.

Crickmore also assigned, but waived, a seventh assignment of error which, because of the waiver, will not be further treated by this court.

In support of his appeal Crickmore has filed a partial transcript of proceedings which omits the testimony of at least four witnesses and, perhaps, colloquy between court and counsel. It is basic to appellate review that for the appellant to prevail the record before the appellate court must portray the errors assigned, and when the issue is that a verdict or finding is against the weight of the evidence it must appear that all of the evidence on the issue is before the court of appeals. Thus, App. R. 9(B) prescribes in part:

"* * * If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the weight of the evidence, he shall include in the record a transcript of all evidence relevant to such findings or conclusion. * * *"

If the evidence contained in a partial record does not itself conclusively support the finding or conclusion, and it does not affirmatively appear that omitted evidence has no bearing on such finding or conclusion, it will be presumed that the omitted evidence supports the finding or conclusion. The responsibility is accurately set forth by the Supreme Court in its *per curiam* opinion in *Knapp* v. *Edwards Laboratories* (1980), 61 Ohio St. 2d 197, 199 [15 O.O.3d 218]:

"The duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record. See *State* v. *Skaggs* (1978), 53 Ohio St. 2d 162 [7 O.O.3d 243]. This principle is recognized in App. R. 9(B), which provides, in part, that '* * * the appellant shall in writing order from the reporter a complete transcript or a transcript of such parts of the proceedings not already on file as he deems necessary for inclusion in the record * * *.' When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm."

Accordingly, we find the second, third, fourth and sixth assignments of error, all dealing with weight of the evidence, not portrayed by the record and, thus, without merit. For convenience we go then to the fifth assignment of error.

Argument of the fifth assignment of error in appellant's brief discloses that, notwithstanding its assertion of a refusal to admit the testimony of Dawn Crickmore into evidence, there is nothing in the record to show that such testimony was refused, let alone proffered. We conclude that the assignment relates only to a proffer by appellant, after the sustaining of an objection thereto, that if his natural mother, Marie Kreider, were permitted to testify "with respect to the remaining conversations which she has not testified to, she will say that she overheard the conversations and that her son, Gary, which she's already testified to, asked for visitation privileges and was denied repeatedly by Rhonda * * *."

Before the objection was sustained it had appeared from Crickmore's testimony that his mother eavesdropped, by listening in on another phone, on various telephone calls which Crickmore had made to the child's mother. There is nothing in the record to show that this listening by Crickmore's mother was done with the knowledge of the child's mother.

Obviously, the attempt to show the mother's alleged denials of visitation in these phone conversations constituted an attempt to introduce evidence which

was hearsay in character and inadmissible pursuant to Evid. R. 802 unless within exceptions prescribed by the Constitution of the United States, the Constitution of the state of Ohio, by statute not in conflict with a rule of the Supreme Court, or by rules prescribed by the Supreme Court. We find no applicable exceptions and our attention is not called to any applicable exceptions by the appellant. Moreover, the alleged denials of visitation by the child's mother are merely cumulative to Crickmore's testimony of such denials, are not necessarily relevant to the statutory issue of failure to communicate with the minor, and it also appears from the trial court's opinion that, notwithstanding the refusal to permit the mother of Crickmore to testify as to such denials, the trial court concluded, "[f]urther the mother had cause for refusing visitation." Accordingly, if we were to conclude that the testimony was not excludible as hearsay, we would still conclude that the fact sought to be proved was proved by other evidence and the exclusion of Mrs. Kreider's testimony as to the refusals of visitation was not prejudicial to the appellant. We find the fifth assignment of error without merit.

We thus return to consideration of the first assignment of error, in argument of which the appellant makes various contentions.

Upon the undisputed evidence it appears that without benefit of marriage the appellant and the child's mother were living together at the time of the child's conception and birth but that neither the appellant nor anyone else was named as its father on its birth certificate; that, nevertheless, the appellant and the child's mother have always otherwise acknowledged his paternity of the child; that appellant and the child's mother have lived apart from shortly after the birth of the child and the child's mother subsequently met and married the petitioner; that on September 28, 1983, the appellant filed a paternity suit to have himself declared the legal father of the child and two days later, on September 30, 1983, the petitioner petitioned for the child's adoption; that on February 15, 1984, just prior to the introduction of evidence in hearing of the adoption action, the appellant's paternity was established; and that no support order has ever been entered requiring the appellant to support the child. On the basis of this evidence the appellant claims that he had no duty to provide support, "as required by law or judicial decree" in the year preceding the filing of the adoption petition.

There is substantial authority that the "reputed father of a bastard child is not legally and financially responsible for its maintenance unless there is a statute imposing such a duty upon him." *State, ex rel. Beebe,* v. *Cowley* (1927), 116 Ohio St. 377. See, also, *Baugh* v. *Carver* (1981), 3 Ohio App. 3d 139.

Those cases did not, however, involve the present statutory scheme, which, in paternity actions under R.C. Chapter 3111 was considerably changed by amendments effective June 29, 1982. Notwithstanding, we are not here concerned with any requirement for a child support award in paternity actions but are concerned, instead, solely with whether in the circumstances here prevailing the consent of Crickmore was needed for the adoption of the subject child.

R.C. 3107.06, setting forth those who must consent to adoption, provides that "[u]nless consent is not required under section 3107.07 of the Revised Code, a petition to adopt a minor may be granted only if written consent to the adoption has been executed by all of the following * * *." Thus, it speaks of consent as of the time of the granting of the petition and not as of the time of its filing. In this case at the time the petition was granted Crickmore by this paternity

action had established himself as, and had the capacity of, the natural father of the minor child. He was no longer merely the putative, or reputed, father, and the natural parent-child relationship retroactive to the time of birth became determinative for all purposes. R.C. 3111.02 and 3111.13. Thus, unless his consent became unnecessary by virtue of the provisions of R.C. 3107.07, his paternity having been established by court decree, consent was required under R.C. 3107.06(B).

As noted, it appearing from the intent of the legislature, as evident from the provisions of R.C. Chapter 3111, that the proceeding therein establishes a natural father and child relationship retroactive to birth by the issuance of a new birth certificate and the arising and enforcement of other correlative obligations consistent with retroactivity, it then appears that though Crickmore may not theretofore have been subject to a duty of support imposed by judicial decree, his duty required by law to support the child from the date of birth was confirmed and ratified by the paternity decree and if he failed to provide such support for the year prior to the filing of the adoption petition his consent to the adoption could properly be dispensed with pursuant to R.C. 3107.07. We thus reject any claim by the appellant that he had no duty of child support prior to the entry of the paternity decree.

Appellant then contends that if such is the case the evidence proved that the mother of the child refused to accept support thus relieving him of the continued duty to provide support to the child.

However, the trial court made certain findings in its opinion which, under the provisions of Civ. R. 52, satisfy the requirements of that rule as evidentiary findings of fact. These became incontestible by reason of the failure of appellant to file as part of the record a complete evidentiary transcript of proceedings.

These findings of fact include findings that "in the year 1982, the natural father offered seven or eight $25.00 checks to the mother for support of the child, some of which she admittedly refused," and that "no payments for child support have been made or tendered during the one-year period preceding the filing of the petition."

Although we must conclude, therefore, that Crickmore failed to provide for the maintenance and support of the minor as required by law for a period of at least one year immediately preceding the filing of the adoption petition, the trial court did not find, either in its opinion or in its journal entry of adoption, that such failure was without justifiable cause. On page 9 of the transcript of proceedings the mother acknowledges that she did not take three checks sent to her for the daughter's support. On pages 33 and 34 of the transcript she admitted that either in calendar year 1983, or early in 1982, she told Crickmore "that he couldn't see his child because there was a restraining order out and if he came down, he'd be arrested," which order had never been issued. On page 34 she qualifies her arrest warning to be that he would be arrested if "he came around and started tearing things up again." At some unstated time she told his father and stepmother that she would not allow Crickmore to see their child, that she wanted to see whether he would straighten up, or that she could wait a month, two months or three months. In May 1983, within the critical year, the child's mother wrote to Crickmore's father and stepmother advising them that she could not let Crickmore see the child anymore.

From this evidence, without resort to any other, it appears that the mother had deprived, and intended to continue to deprive, Crickmore of any visitation with the child notwithstanding that she

did not dispute that he was its natural father. We cannot say that her attitude in this respect was not justified, but this attitude, communicated to him, as well as her earlier rejection of support payments bore upon whether his failure to maintain or support was, in turn, with justifiable cause.

Although the statute has been amended from containing a provision of "willful failure to properly support and maintain" to containing the provision of failure "without justifiable cause * * * to provide for the maintenance and support," the principles are much the same. With relation to the statute in its former aspect this court said in *In re the Adoption of Link* (App. 1972), 67 O.O. 2d 310, 313:

"We may consider that here the mother by her explicit denial of the right of the natural father to visit his child combined with a renunciation of any payment of support by him created the situation that thereafter ensued. She, in effect, represented that his rights to visit were being arbitrarily (and it may be noted in violation of court order) terminated and that this being the case, she wanted no contribution toward the support of the child. It will be further noted that there is no evidence that during the ensuing five years from May 1967 to July 1972 when the hearing was held on the adoption, that action was taken by the wife to in any way enforce the court order of support — a state of affairs fully consistent with her declared renunciation of support payments. It may be concluded that in effect there existed an unwritten and implied understanding between the natural parents but one amply evidenced by conduct over a five year period that the mother would assume the full financial burden of support if the father would forego his visitation rights."

Although the *Link* case involved a court support order not enforced by the mother, which situation does not exist in this case, the two cases are nonetheless parallel, for in this case the mother could have initiated paternity proceedings and forced support but chose to forego such relief while she had the ability to herself support the child and so long as the natural father of the child kept his distance. Based on the principles set forth in the *Link* case as applied to willful failure to support and maintain it is our opinion that in this case the natural father had justifiable cause not to provide for the maintenance and support of the child during the year prior to the filing of the adoption petition.

Accordingly, we must conclude that the adoption could not proceed without the consent of the appellant-father, that the first assignment of error is well-taken, that the adoption decree of the trial court must be reversed and vacated, and that final judgment must be rendered denying the adoption petition.

*Judgment reversed and*
*final judgment rendered.*

COLE and MILLER, JJ., concur.