IN RE ADOPTION OF LABO.

(No. 17-86-13—Decided May 13, 1988.)

■■■■■■■■■■■

*William E. Lang,* for appellant Robert B. Hageman.

*Michael L. Smith,* for appellees Fred and Barbara Labo.

SHAW, J. This is an appeal from a judgment of the Probate Division of the Court of Common Pleas of Shelby County, approving a petition for adoption without the consent of the natural father.

The natural father (appellant herein) now appeals asserting the following two assignments of error:

"I. The trial court erred in finding that the consent of Robert Hageman, the natural father, was not necessary.

"II. The trial court erred in finding that the granting of the adoption was in the best interest of Philip Thomas Hageman."

### Assignment of Error I

The record reflects that the petition for adoption of Philip Thomas Hageman ("son") (born January 20, 1977) was filed on November 4, 1985 by Fred Labo ("stepfather") and Barbara Labo ("natural mother") who were married in 1984. The mother and Robert Hageman ("natural father") were divorced in 1979. At that time, custody of the son was awarded to the mother and the natural father was ordered to pay $15 per week in child support.

Another child of the natural mother and natural father, Jacqueline Hageman (born June 10, 1972) ("daughter") was also included in the same petition for adoption but for procedural reasons involving another appeal is not before us in the present case. The natural father refused to consent to the adoption of either child.

R.C. 3107.07 ("who need not consent") provides in pertinent part as follows:

"Consent to adoption is not required of any of the following:

"(A) A parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner."

The petition for adoption in this case alleges that the natural father "* * * has failed without justifiable cause to provide for the maintenance and support of the minors as required by law or judicial decree for a period of at least one year immediately preceding filing of the adoption petition, and has failed to communicate with the minors for said period." A contested hearing as to the adoption of the son was held in the probate court on February 20, 1986. (The natural father was not present but was represented by counsel.)

At the hearing, the evidence was undisputed that the natural father had paid no support on behalf of the son for a period of at least one year immediately preceding the filing of the adoption petition. However, during this same period of time, there was some evidence of communication by phone and letter between the natural father and the son and daughter. In addition, there was some evidence of interference with this communication by the natural mother and stepfather.

In his first assignment of error, the natural father makes two principal arguments: (1) that in order to dispense with the consent of a natural parent in an adoption proceeding, R.C.

3107.07(A) requires the petitioners to allege and prove *both* a failure to communicate *and* a failure to pay support; and (2) that even assuming his first argument is not correct, the interference of the petitioners in this case with the natural father's efforts to communicate with his son and daughter constituted "justifiable cause" for his failure to pay support.

### (1)

In the case of *In re Adoption of McDermitt* (1980), 63 Ohio St. 2d 301, 17 O.O. 3d 195, 408 N.E. 2d 680, the Supreme Court of Ohio addressed and rejected the identical argument by a natural father that R.C. 3107.07 requires a showing of *both* a failure to communicate *and* a failure to support in order to eliminate the need for consent in an adoption case:

"In his first proposition of law, appellant [natural father] asserts that in the phrase, 'communicate with the minor child *or* to provide maintenance and support of the minor,' in R.C. 3107.07(A), the 'or' must be read and applied as an 'and.' We do not agree.

"* * *

"* * * Appellant is incorrect in his assertion that there is a dual requirement to show a natural father's failure to support the minor child and to communicate with the minor child." (Emphasis *sic*; citations omitted.) *McDermitt, supra,* at 303-304, 17 O.O. 3d at 196-197, 408 N.E. 2d at 682-683.

Subsequent decisions of the Ohio Supreme Court involving the application of R.C. 3107.07(A), while not turning upon precisely the same issue as decided in *McDermitt, supra,* have nevertheless clearly conformed to the *McDermitt* ruling. Most recently, in *In re Adoption of Bovett* (1987), 33 Ohio St. 3d 102, 515 N.E. 2d 919, which involved a failure to provide support only, the court stated in footnote 1:

"Under R.C. 3107.07(A), adoption may proceed without consent if the natural parent has failed to communicate with the child for a period of one year. The failure to communicate proviso, *which is an alternative to the failure to support proviso,* is not before us on the facts of this case." (Emphasis added.)

Continuing in the *Bovett* opinion, the court subsequently stated:

"We disagree with the court of appeals' interpretation of R.C. 3107.07 (A). That statute states that a natural parent's consent is not required if both (1) the parent *either* (a) failed to communicate with the child for at least one year *or* (b) failed to provide for the maintenance and support of the child for at least one year, *and* (2) such failure was without justifiable cause." (Emphasis added; citations omitted.) *Id.* at 105, 515 N.E.2d at 923.

See, also, *In re Adoption of Lay* (1986), 25 Ohio St. 3d 41, 42, 25 OBR 66, 67, 495 N.E. 2d 9, 10; and *In re Adoption of Masa* (1986), 23 Ohio St. 3d 163, 165, 23 OBR 330, 331, 492 N.E. 2d 401, 404.

Based upon the foregoing authority, we reject appellant's first argument and hold that pursuant to R.C. 3107.07(A), a natural parent's consent is not required where that parent has failed without justifiable cause to provide support as specified in that statute, even though that parent may have had some communication with the child during the same period.

### (2)

The natural father here also argues that the interference with his *communication* with the son which took place in this case constituted "justifiable cause" for his failure to pay *support.* He cites two cases in support of this argument: *In re Adoption of Foster* (1985), 22 Ohio App. 3d 129, 22 OBR 331, 489 N.E. 2d 1070, and *In re Lindley* (Mar. 20, 1980), Cuyahoga App. No. 40333, unreported.

However, both *Foster* and *Lindley*

involved substantially greater interference than is present in the case before us. More importantly, each of those cases involved interference not just with communication but interference with the natural father's legitimate efforts to locate his children and *pay the support,* including the refusal and return of payments. *In re Foster, supra,* at 133, 22 OBR at 335, 489 N.E. 2d at 1074-1075; *In re Lindley, supra,* at 12-13. See, also, for a further example of significant interference, *In re Adoption of Holcomb* (1985), 18 Ohio St. 3d 361, 369, 18 OBR 419, 426, 481 N.E. 2d 613, 621.

In the case before us, the evidence reflects that during the year immediately preceding the filing of the adoption petition, the natural father sold the marital home for $53,000 and moved to Arizona where he subsequently obtained employment, realizing in excess of $14,000 in gross income from three different sources during the year. At the same time, the bureau of support records reflect a total amount of $100 support paid in 1984, $30 paid in 1985, and $90 paid in 1986, with no support paid during the twelve months immediately preceding the filing of the adoption petition.

With the exception of two undetermined Christmas presents, at no time was any offer of support made by the natural father or refused by the natural mother and stepfather. Nor was there any effort on the part of the natural mother or stepfather to conceal the whereabouts of the children from the natural father.

During the time the natural father was in Arizona, there was some effort, primarily by the stepfather, with the natural mother's acquiescence, to prevent phone calls and to discourage contact by letter between the natural father and the son and daughter. However, the testimony of the son and daughter indicates that ultimately it was their own choice to discontinue contact with the natural father due to his failure to take care of them or show any real interest in them.

In *In re Adoption of Holcomb, supra,* the Supreme Court of Ohio held in paragraph three of the syllabus:

"Significant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for the non-custodial parent's failure to communicate with the child. * * *"

In *In re Adoption of Masa, supra,* the Supreme Court of Ohio held in paragraph two of the syllabus:

"The question of whether justifiable cause for failure to pay child support has been proven by clear and convincing evidence in a particular case is a determination for the probate court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence. (*In re Adoption of McDermitt* [1980], 63 Ohio St. 2d 301, 306 [17 O.O. 3d 195], followed.)"

The ruling in *Masa, supra,* has been recently clarified to emphasize that while the burden of going forward may shift pursuant to R.C. 3107.07(A), the burden of proof remains with the petitioner for adoption, who must prove by clear and convincing evidence, both (1) that the natural parent has failed to support the child for the requisite one-year period, and (2) that this failure was without justifiable cause. See *In re Adoption of Bovett, supra,* at 104, 515 N.E. 2d at 922.

Based upon the facts in the case before us, we cannot say that the decision of the probate court finding that the natural father's failure to provide support was without justifiable cause was against the manifest weight of the evidence. Accordingly, we must reject the appellant's second argument set

forth above and overrule the first assignment of error.

### Assignment of Error II

In his second assignment of error, the natural father challenges the finding of the probate court that the adoption was in the best interests of the son, essentially as against the weight of the evidence. Specifically, the natural father argues that inasmuch as the son will continue to live in the home of the natural mother and stepfather regardless of the adoption, the decision of the probate court does not gain him a home but simply deprives the son unnecessarily of his right to a child-father relationship with the natural father.

We find that an investigation of this adoption was conducted by the Children's Services Board of Shelby County and a report of that investigation was made part of the record herein. R.C. 3107.12 governs such investigations and provides in pertinent part as follows:

"(A) An investigation shall be made by the department of human services, an agency, or other person appointed by the court into the conditions and antecedents of a minor sought to be adopted and of the petitioner, for the purpose of ascertaining whether the adoptive home is a suitable home for the minor and whether the proposed adoption is in the best interest of the minor. * * *

"* * *

"(C) The report of the investigation shall contain, in addition to any other information that the court requires regarding the petitioner or the minor sought to be adopted, the following information:

"(1) The physical and mental health, emotional stability, and personal integrity of the petitioner and the ability of the petitioner to provide for the needs of the minor;

"(2) The physical, mental, and developmental condition of the minor;

"(3) The minor's family background, including names and identifying data regarding the biological or other legal parents, and except when the adoption is by a stepparent or grandparent, the social and medical histories described in division (D) of this section, to the extent that they can be prepared;

"(4) The reasons for the minor's placement with persons other than his biological or other legal parents, their attitude toward the proposed adoption, and the circumstances under which the minor came to be placed in the home of the petitioner;

"(5) The attitude of the minor toward the proposed adoption in any case in which the minor's age makes this feasible.

"(6) The recommendation of the investigator as to the granting or denial of the petition for adoption."

R.C. 3107.14(C) bestows the final responsibility for determining the best interest of the minor upon the court as follows:

"If, at the conclusion of the hearing, the court finds that the required consents have been obtained or excused and that the adoption is in the best interest of the person sought to be adopted, it may issue * * * a final decree of adoption * * *."

In the case before us, the investigative report of the children's services board reviewed the factors enumerated in R.C. 3107.12(C) and found the adoptive home to be suitable. Accordingly, the investigator recommended that the petition for adoption be granted. Obviously, the primary responsibility in relation to whether an adoption should be allowed is bestowed under the law on the probate judge. Nevertheless, it is generally agreed that great weight should also be accorded to the report and investigation

made pursuant to R.C. 3107.12. See *In re Adoption of Baker* (1962), 117 Ohio App. 26, 27, 90 Ohio Law Abs. 125, 127, 22 O.O. 2d 459, 185 N.E. 2d 51, 52; *In re Adoption of Carnes* (1983), 8 Ohio App. 3d 435, 437, 8 OBR 560, 562, 457 N.E. 2d 903, 905; and 46 Ohio Jurisprudence 3d (1983) 165, Family Law, Section 228.

From the investigation and other evidence in the record, including the fact that the son (as well as the daughter) testified that he understood the nature of the adoption and wanted to be adopted, it is our conclusion that the decision of the probate court finding the adoption to be in the best interest of the son is supported by substantial, competent and credible evidence and accordingly should not be reversed as against the weight of the evidence. *C.E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578. The second assignment of error is overruled and the judgment of the probate court is affirmed.

*Judgment affirmed.*

MILLER and EVANS, JJ., concur.