WARGO et al., Appellants and Cross–Appellees,

v.

BUCK, Appellee and Cross–Appellant.

[Cite as *Wargo v. Buck* (1997), 123 Ohio App.3d 110.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 95 C.A. 96.

Decided Sept. 25, 1997.

112

*Stewart D. MacDonald* and *Martin S. Delahunty III*, for appellants and cross–appellees.

*Marshall D. Buck*, for appellee and cross–appellant.

GENE DONOFRIO, Presiding Judge.

Plaintiffs-appellants, Eugene G. Wargo and Jean Wargo, appeal from a final order of the Mahoning County Common Pleas Court upon a jury verdict in this personal injury action. Defendant-appellee, Richard L. Buck, has filed a cross-appeal in this matter.

On June 22, 1991, appellant Eugene Wargo's vehicle was struck in the rear by a vehicle driven by appellee. On June 24, 1991, appellant Eugene Wargo suffered the rupture of a cerebral aneurysm, causing subsequent severe disability.

On June 16, 1993, appellants filed a civil complaint against appellee, alleging negligence on the part of appellee and seeking damages for the injuries incurred. Appellee subsequently admitted negligence, and the case was presented to a jury on the issue of damages proximately caused by the accident.

At trial, it was disclosed that on the day of the accident, appellants' vehicle was stopped on South Avenue in Boardman, Ohio, waiting to make a turn into the parking lot of Sam's Club. Appellee's vehicle struck appellants' vehicle from behind. From the evidence, it appears that only minimal damage was caused to appellants' vehicle.

At the time of the accident, appellant Eugene Wargo was driving, with his two children in the car with him. Both of his children testified at trial that their father claimed to have hit his head on the steering wheel, and that he had a noticeable mark on his forehead after the accident. On cross-examination, defense counsel attempted to discredit this testimony by pointing to earlier deposition testimony during which the children had stated that there were no marks on their father's head after the accident.

Appellant Jean Wargo, wife of Eugene Wargo, testified that she was not in the vehicle on the day of the accident, but that after the accident, her husband complained about his head, and that when she looked at his head, he had a "knot" and a red spot. She further testified that she put an ice bag on her husband's head and asked him how he felt, and that he complained of a headache and asked for Tylenol.

Jean Wargo also testified that on the evening after the accident, appellants went to a friend's house to visit. She testified that she asked her friend, who was a nurse, to look at her husband's head because he was complaining of a headache and had started to complain about a stiff neck. She testified that they did not visit as long as they normally would have because her husband was not feeling well.

Jean Wargo further testified that on the next morning, the family got up and went to church and then went to visit Eugene Wargo's mother. She testified that her husband fell asleep while they were visiting and that they had trouble waking him up. She further testified that he complained consistently of headaches and a stiff neck that day.

Finally, Jean Wargo also testified that on the evening of the next day, she and her husband were at a Little League baseball game where her husband continued to complain about being tired and not feeling well. She testified that immediately after, he seemed to lose his balance and that she and a friend placed her husband into a car and started to drive him to the hospital, but that it appeared to them both that he was losing his ability to communicate, at which point they stopped and called an ambulance. Other evidence at trial established that appellant Eugene Wargo had suffered from a rupture of a subarachnoid aneurysm and that he had suffered severe neurological damage as a result of it.

At trial, appellee presented the expert testimony of Dr. Donald Tamulonis. It appeared from Dr. Tamulonis's testimony that he was contacted sometime in March 1992 by counsel for appellee and asked to render an opinion, based upon a review of documents, whether appellant Eugene Wargo's injuries had been proximately caused by the accident. Dr. Tamulonis testified that it was his opinion at that time that there was no causal relationship between the accident and the ruptured aneurysm.

Despite having rendered an opinion favorable to appellee at the request of appellee's counsel, Dr. Tamulonis on March 10, 1993, accepted appellant Eugene Wargo as a patient. Dr. Tamulonis testified that he made full disclosure to appellants when they first came to see him that he had previously rendered an opinion to appellee's counsel that there was no causal relationship between appellant Eugene Wargo's injuries and the accident. Dr. Tamulonis also testified that even after examining appellant, his opinion did not change in this respect.

At trial, appellant Eugene Wargo objected to appellee's presentation of Dr. Tamulonis's testimony, alleging a conflict of interest on the part of Dr. Tamulonis acting as an adverse witness and a treating physician at the same time, and asserted the patient-physician privilege in order to preclude Dr. Tamulonis's testimony. The trial court overruled appellant's objection in this regard.

Appellee also objected to the trial court's instructing the jury, at appellants' request, on remote cause vis-a-vis proximate cause, which objection was similarly overruled.

At the close of trial, the trial court submitted a plaintiff's verdict form to the jury. The jury found in favor of appellants, but awarded damages in the amount of zero dollars. Appellants then filed the instant appeal, and appellee filed a cross-appeal.

Appellants have listed three assignments of error. In the first, appellants argue that:

"The failure of the jury to award damages to the plaintiff is against the manifest weight of the evidence mandating re–trial of this matter."

Appellants argue that there was a great deal of testimony presented by both appellants and appellee on the issue of whether the rupture of appellant Eugene Wargo's aneurysm was proximately related to the automobile accident. Appellants note that although defense experts testified that the rupture of the aneurysm was not proximately related to the auto accident, these experts did admit that appellant was injured in the accident. Appellants point to Dr. Tamulonis's testimony, during which he stated as follows:

"Q Now, you said that he gave you a history that he experienced a headache and neck pain. Is that significant to you?

"A Yes. Certainly anyone who is in an automobile accident and is rear-ended will develop the typical whiplash injury where they will have pains where they are suddenly lunged forward and backwards being struck from behind, so they will develop strain and spasm of these posterior neck muscles which can radiate up into the occipital region of the head or the back of the head and sometimes into the forehead itself. So whiplash injuries are very, very common injuries, and certainly that—and when I saw him *I felt that that day following the accident those headaches were related to the accident itself and from a whiplash injury.*" (Emphasis added.)

Appellants argue that this testimony, along with the testimony of another physician, established that appellant did incur pain and suffering as a result of the automobile accident, and that the jury's verdict in the amount of zero dollars was thus error.

Appellants cite *Slivka v. C.W. Transport, Inc.* (1988), 49 Ohio App.3d 79, 550 N.E.2d 196, wherein the appellate court ruled that because the jury had not reached a decision as to the amount the plaintiff was entitled to recover for pain and suffering, the case should be remanded for a new trial. Appellants also cite *Baum v. Augenstein* (1983), 10 Ohio App.3d 106, 10 OBR 129, 460 N.E.2d 701, and argue that a new trial is warranted based on inadequacy of damages where it

appears from the record that the jury failed to consider an element of damages raised by uncontroverted expert testimony.

Appellants argue that, having established through uncontroverted evidence that appellant was injured and did incur pain and suffering, the failure on the jury's part to award damages for pain and suffering was against the manifest weight of the evidence, requiring a retrial on the issue of damages.

In response, appellee argues that this court should not invade the province of the jury in the determination of the weight to be given to opinion evidence rendered by an expert, and that a jury is not required to find in accordance with an opinion of an expert. Appellee cites *Camden v. Miller* (1986), 34 Ohio App.3d 86, 517 N.E.2d 253, and argues that it is the duty of a jury to determine whether the facts upon which an expert opinion is based have been proven by the greater weight of the evidence.

Appellee argues that Dr. Tamulonis's statement that Eugene Wargo sustained a whiplash injury was based exclusively on the history provided to him during appellant's office visit of March 10, 1993, including facts stating that he had struck his head on the steering wheel, sustaining a bruise to the head. Appellee argues that these facts were contradicted by the testimony of Officer Hoffman, who testified that he noted no injury on his accident report, and by the deposition testimony of appellant's children.

Appellee further points to evidence that appellant Eugene Wargo had finished his shopping following the accident and had visited his friends on the night of the accident, had attended church the next day, had participated in a three-mile fundraiser hike for St. Elizabeth Hospital, and had also visited his mother. Appellee further notes that there was testimony that Eugene Wargo had fulfilled a busy work day on the Monday following the accident and that all of the foregoing was sufficient to sustain the jury's determination that he had not sustained injury as a result of the accident.

Finally, appellee argues that if appellants believed that the verdict was substantially defective, the proper procedure would have been to request the trial court to poll the jurors. Appellee argues that, absent such a request, any error must be deemed waived, citing *Sapp v. Stoney Ridge Truck Tire* (1993), 86 Ohio App.3d 85, 619 N.E.2d 1172.

In considering whether a judgment is against the manifest weight of the evidence, we begin with the presumption that the findings of the trier of fact are correct. See *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 79–80, 10 OBR 408, 409–410, 461 N.E.2d 1273, 1275–1276. A judgment supported by some competent, credible evidence will not be reversed as being against the manifest weight of the evidence. See *Gerijo, Inc. v. Fairfield* (1994), 70 Ohio St.3d 223,

226, 638 N.E.2d 533, 536–537. Because of the nature of the inquiry we must undertake, App.R. 9(B) provides:

" * * * If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the weight of the evidence, the appellant shall include in the record a transcript of all evidence relevant to the findings or conclusion."

■ If the evidence contained in a partial record does not itself conclusively support the finding or conclusion and it does not affirmatively appear that omitted evidence has no bearing on such finding or conclusion, it will be presumed that the omitted evidence supports the finding or conclusion. See *In re Adoption of Foster* (1985), 22 Ohio App.3d 129, 131, 22 OBR 331, 332, 489 N.E.2d 1070, 1072–1073. We note that in support of this assignment of error, appellants have provided only a partial transcript of the trial court's proceedings. Although appellants have provided a portion of the record which they claim indicates that appellant Eugene Wargo suffered some pain and suffering, the question we must determine is whether there was any competent, credible evidence to support a finding that appellant suffered no damages.

■ Appellants claim that although the jury found no connection between the accident and the ruptured aneurysm, it was nonetheless uncontroverted that Eugene Wargo suffered some pain so as to merit damages for pain and suffering. However, without an entire record of the evidence presented in this regard, we are in no position to say that no evidence was presented from which the jury could have reached its determination that Eugene Wargo's damages were zero. Indeed, without a complete record we cannot pass even on appellant's claim that such evidence was uncontroverted. Although in some cases we might legitimately rely on a partial record based on appellee's right to order any part of the transcript deemed necessary for determination of the appeal, where, as here, the only issue tried was the extent of appellants' damages, we are disinclined to believe that omitted testimony was not relevant to the jury's determination of the compensable amount to be awarded.

■ Mindful of our preference for resolving cases on the merits rather than on procedural deficiencies, we note that even if we were to assume the record before us was the only evidence relevant to the issue of Eugene Wargo's damages—an assumption we do not believe is warranted—we still could not say that the jury verdict in this case was unsupported by competent credible evidence. Appellee has included in the record the testimony of Officer Hoffman, whose report made at the scene of the accident indicated that none of the occupants of the vehicles, including Eugene Wargo, claimed or appeared to have suffered injury.

We note too that appellant's reliance on *Slivka* and *Baum, supra,* is misplaced. In *Slivka,* the case was remanded because the jury had not reached a decision as to the amount the plaintiff was entitled to recover for pain and suffering. While we disagree with the court's ability to determine, based on a partial transcript, that the evidence was uncontroverted, we nonetheless note that in that case the plaintiff and both parties' expert witnesses testified that Slivka had suffered some pain as a result of the injury. In the case *sub judice,* while a variety of witnesses maintain that Eugene Wargo suffered headaches, the question presented to the jury was whether the headaches and the subsequent injuries were caused by the collision or by the independent rupturing of appellant's subarachnoid aneurysm. Indeed, appellant elsewhere argues that the headaches Eugene Wargo experienced following the accident were consistent with the "slow leakage of an aneurysm." If the jury found that the aneurysm was not caused by the collision and that the headaches resulted from the ruptured aneurysm, then it would follow that the headaches were not causally related to the collision. The issue of causation does not appear to have been at issue in *Slivka.* And in *Baum,* a case relied on by *Slivka,* there is nothing to suggest that the court of appeals had before it anything less than a full record in determining that evidence of the amount of plaintiff's damages was uncontroverted.

Based upon the record before us, we cannot say that the verdict was against the manifest weight of the evidence.

Appellants' first assignment of error is without merit.

In their second assignment of error, appellants argue:

"The trial court erred in failing to exclude testimony of Donald J. Tamulonis, Jr., M.D., in the matter below."

Appellants argue that, on March 10, 1993, Eugene Wargo entered into a physician/patient relationship with Dr. Tamulonis, apparently unaware that Dr. Tamulonis was actively engaged in a relationship with the law firm representing appellee for purposes of rendering expert testimony against appellants. Appellants claim that while Dr. Tamulonis informed appellants that he had been asked to render an opinion a year earlier with respect to the review of some medical files, he did not inform appellants that he had an ongoing relationship with appellee's counsel and that he would provide further information to said counsel. Appellants point to the fact that they first visited Dr. Tamulonis on March 10, 1993 and that Dr. Tamulonis submitted a report to appellee's counsel dated March 10, 1993. Appellants cite the case of *Hammonds v. Aetna Cas. & Sur. Co.* (N.D. Ohio 1965), 243 F.Supp. 793, 7 Ohio Misc. 25, and argue that *ex parte* interviews with physicians by opposing counsel are inappropriate and constitute a breach of the physician/patient privilege. Appellants argue that, other than

discovery pursuant to the Rules of Civil Procedure, R.C. 2317.02 does not allow for communication between defense counsel and a plaintiff's treating physician.

In response, appellee first notes that Dr. Tamulonis advised appellants at their initial office visit that he had previously been asked to review the records and render an opinion concerning the causal relationship between the automobile accident and the ruptured aneurysm. Further, appellee argues that there was no foundational basis for appellants' assertion that counsel for appellee engaged in a number of *ex parte* interviews with Dr. Tamulonis.

In addition, appellee argues that by filing an action for damages relating to the rupture of the aneurysm, the testimonial privilege set forth in R.C. 2317.02 does not apply, and a physician may be compelled to testify concerning any communication made to them, or about advice given to patients, that is related causally or historically to physical or mental injuries that are relevant to the issues in the civil action. Appellee argues that the legislature has clearly intended that where a party places a physical or mental injury in issue, the other party should have the right to obtain discovery and testimony from the plaintiff's treating physicians on matters relevant to the issues in the litigation. Therefore, appellee claims that the trial court properly ruled that the testimony of Dr. Tamulonis was admissible.

The physician-patient privilege in Ohio is governed by R.C. 2317.02, which provides in pertinent part:

"The following persons shall not testify in certain respects:

" * * *

"(B)(1) A physician or a dentist concerning a communication made by a patient in that relation or the physician's or dentist's advice to a patient, except as otherwise provided in this division, division (B)(2), and division (B)(3) of this section, and except that, if the patient is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the physician may be compelled to testify on the same subject.

"The testimonial privilege under this division is waived, and a physician or dentist may testify or may be compelled to testify in a civil action, in accordance with the discovery provisions of the Rules of Civil Procedure in connection with a civil action, or in connection with a claim under Chapter 4123. of the Revised Code [worker's compensation], under the following circumstances:

"(a) If the patient or the guardian or other legal representative of the patient gives express consent;

" * * *

"(c) If a medical claim, dental claim, chiropractic claim, or optometric claim, as defined in section 2305.11 of the Revised Code, an action for wrongful death, any other type of civil action, or a claim under Chapter 4123. of the Revised Code is filed by the patient, the personal representative of the estate of the patient if deceased, or his guardian or other legal representative.

" * * *

"(2) If the testimonial privilege described in division (B)(1) of this section is waived as provided in division (B)(1)(c) of this section, a physician or dentist may be compelled to testify or submit to discovery under the Rules of Civil Procedure only as to a communication made to him by the patient in question in that relation, or his advice to the patient in question, that related causally or historically to physical or mental injuries that are relevant to issues in the medical claim, dental claim, chiropractic claim, or optometric claim, action for wrongful death, other civil action or claim under Chapter 4123. of the Revised Code." [1]

At common law, there is no physician-patient privilege in Ohio. See *Hollis v. Finger* (1990), 69 Ohio App.3d 286, 293, 590 N.E.2d 784, 788–789. Because the privilege is entirely statutory and in derogation of common law, it must be strictly construed against the party seeking to assert it. See *Ohio State Med. Bd. v. Miller* (1989), 44 Ohio St.3d 136, 140, 541 N.E.2d 602, 605–606. The purpose of the privilege is to create an atmosphere of confidentiality which theoretically will encourage the patient to be completely candid with his or her physician, thus enabling more complete treatment, and to encourage patients to make a full disclosure of their symptoms and conditions to their physicians without fear that such matters will later become public. See *id.* at 140, 541 N.E.2d at 605–606.

The compulsory waiver of the privilege effectuated by the filing of "any other type of civil action" was not always part of the privilege, but was introduced into the statute by the Ohio Tort Reform Act of 1987. See *Hollis, supra,* at 294, 590 N.E.2d at 789–790. The underlying rationale for this waiver is to prevent patients from filing personal injury actions and then using the privilege to avoid responding to discovery requests. See Robert A. Wade, Note, the Ohio Physician–Patient Privilege: Modified, Revised, and Defined (1989), 49 Ohio St.L.J. 1147, 1157. ("If the physical condition of the patient is at issue in a case, it would be a burlesque upon logic to allow the patient to claim the privilege.").

---

1. This version of R.C. 2317.02 was in effect on March 23, 1993, the day on which appellant attempted to assert the privilege. It has since been amended.

██ The record before us indicates that appellant Eugene Wargo sought treatment from Dr. Tamulonis on March 10, 1993 based on the recommendations of Patty Basic, a friend of appellants. This visit established a patient-physician relationship which, unless waived, would give rise to a physician-patient privilege on the part of Eugene Wargo, sufficient to prevent Dr. Tamulonis from testifying as to any communications exchanged for the pendency of that relationship. However, because Eugene Wargo filed a civil action placing into issue the extent of his injuries, then pursuant to subsection (B)(2), the privilege does not apply. Once the privilege is found not to apply under subsection (B)(2), the physician may be compelled to testify or submit to discovery, subject only to the limitation that the testimony must relate "causally or historically to physical or mental injuries that are relevant to issues in the * * * civil action." Because R.C. 2317.02 requires this result, it could not have been prejudicial error on the part of the trial court to have allowed Dr. Tamulonis to testify.

We note that appellants, in making their argument, direct our attention to the *ex parte* communications between Dr. Tamulonis and counsel for appellee, suggesting that under *Hammonds, supra,* such conduct constitutes a breach of the physician-patient privilege that would warrant the exclusion of Dr. Tamulonis's testimony. However, as appellee correctly notes, there is nothing in the record to indicate that any such communications did indeed occur. Appellee concedes that his counsel received a report from Dr. Tamulonis on March 10, 1993, the same day that appellant Eugene Wargo visited the doctor as a patient. The report in question is not part of the record and there is nothing to suggest that the report was dictated and typed afterwards as opposed to before appellant's visit. Moreover, if such communications had indeed occurred, and the trial court had been appraised of them, by failing to provide a record indicating this, appellants have effectively precluded our review of the matter. This is because the appellant "bears the burden of showing error by reference to matters in the record." *Foster, supra,* 22 Ohio App.3d at 131, 22 OBR at 333, 489 N.E.2d 1070.

Even if such communications had occurred, appellants' reliance on *Hammonds, supra,* is misplaced. *Hammonds* did not involve the physician-patient privilege but rather was an action brought by a patient for a violation of the doctor's duty of secrecy, a duty implicit in the contract of treatment. Indeed, the court in *Hammonds* noted:

"It is one thing to say that a doctor may be examined and cross-examined by the defense in a courtroom in conformity with the rules of evidence with a vigilant surveillance of plaintiff's counsel and the careful scrutiny of the trial judge. It is quite another matter to permit as alleged here an unsupervised conversation between the doctor and his patient's protagonist." *Id.* at 805.

■ As we have already noted, we have no reason to believe that the latter occurred in this case. We note too that a doctor's duty of confidentiality and loyalty to a patient is broader than the limited evidentiary patient-physician privilege. This point was confirmed in *Hammonds,* wherein the court noted:

"The mere waiver of a testimonial privilege does not release the doctor from his duty of secrecy and from his duty of loyalty." *Id.* at 805.

■ Our ruling that the testimony of Dr. Tamulonis was admissible based on the statutory waiver found in R.C. 2317.02(B)(1)(3) does not conflict in any way with this statement. This court is not empowered to carve out additional exceptions to the physician-patient privilege beyond those enumerated in the statute.

Appellant's second assignment of error is without merit.

In their third and final assignment of error, appellants claim:

"The trial court committed prejudicial error by instructing the jury on 'remote cause.' "

Appellants argue that within fifty hours of the accident in question, Eugene Wargo suffered a rupture of the aneurysm. Appellants note that appellee admitted negligence and the case went to trial on the issue of whether the accident was the proximate cause of the rupture. Appellants point to evidence that appellant Eugene Wargo suffered from severe headaches and lethargy following the accident, and point to expert testimony that these symptoms were consistent with documented medical literature regarding the slow leakage of an aneurysm. Appellants also note that appellee offered no evidence of an intervening or superseding act of negligence proximately relating to the rupture of the preexisting aneurysm. Appellants argue that notwithstanding the fact that no other act or acts were offered as causes for the rupture, the trial court improperly charged the jury concerning appellee's negligence being a remote cause of appellant Eugene Wargo's injury.

Appellants also argue that Dr. Tamulonis admitted on cross-examination that frequently individuals who suffer a bursting aneurysm may have "warning leaks" causing headaches prior to the actual bursting. Appellants claim that a cause is remote when the result could not have been reasonably foreseen or anticipated as being the natural or probable cause of an injury, citing *Jeanne v. Hawkes Hosp. of Mt. Carmel* (1991), 74 Ohio App.3d 246, 598 N.E.2d 1174. Appellants argue that injury as a result of a motor vehicle accident may be reasonably foreseen or anticipated and that appellants were thus prejudiced by the lower court's instruction on remote cause.

In response, appellee first argues that the mere coexistence of negligence and injury is not sufficient to establish a causal connection between the two, citing *Rockwell v. Queen City Bottling Co.* (1943), 73 Ohio App. 42, 53 N.E.2d 528. Appellee contends that there existed abundant evidence concerning other factors which could have caused the aneurysm to rupture. Appellee cites the deposition testimony of two other experts and notes that the overwhelming testimony presented in the case was that there was a mere coincidence in time, and that the accident coincidentally occurred approximately fifty-five hours prior to the rupture. Appellee thus argues that the instruction of law on remote cause given by the trial court was an accurate statement of the law based on the evidence presented at trial.

Ordinarily, requested jury instructions should be given if they are correct statements of the law applicable to the facts in the case and if reasonable minds might reach the conclusion sought by the instructions. See *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828, 832. In considering the appropriateness of an instruction, a reviewing court must view the instructions as a whole. *Atkinson v. Internatl. Technegroup, Inc.* (1995), 106 Ohio App.3d 349, 365, 666 N.E.2d 257, 268. See, also, *State v. Price* (1979), 60 Ohio St.2d 136, 14 O.O.3d 379, 398 N.E.2d 772, at paragraph four of the syllabus ("A single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge."). When specific portions of a trial court's instructions are at issue, an appellate court must review the instructions as a whole. *Rinehart v. Maiorano* (1991), 76 Ohio App.3d 413, 418, 602 N.E.2d 340, 343–344.

From the record before us, it is apparent that appellants have failed to include that portion of the record wherein would lie the jury instructions as presented in their entirety. Rather, appellants have provided for us only the specific instruction complained of. A single instruction does not provide a reviewing court with a means of determining whether the trial court adequately conveyed the law to be applied in the context of the case as a whole. For example, in the case *sub judice*, we have no way of knowing whether the trial court gave the specific instruction on remote cause in relation to the aneurysm injury specifically, or with respect to damages as a whole. Inasmuch as the main thrust of appellee's defense was that the collision and the aneurysm were causally unrelated, an argument apparently accepted by the jury, it does not strike us as being plainly erroneous, based on the limited record before us, to have included such an instruction. However, without the opportunity to examine the instructions as a whole, we have no choice but to assume the validity of the proceedings below. We note that even if appellants had provided this court with the entire jury instructions, we do not believe appellants have complied with Civ.R. 51,

which requires that the party appealing the giving of a jury instruction state specifically the grounds for the objection. The record before us indicates that appellants' counsel stated only that he would "strenuously object" to the giving of the instruction. This hardly can be said to have provided the trial court with an adequate basis for refusing to give the instruction requested by appellee.

Appellants' third assignment of error is without merit.

Appellee has listed two cross-assignments of error which read as follows:

"I. The trial court committed prejudicial error by failing to enter judgment in favor of the defendant after the jury found that the plaintiff suffered no damages.

"II. The trial court committed prejudicial error by failing to present a verdict form in favor of the defendant to the jury."

Appellee first argues that injury proximately resulting from negligence is an essential element of any negligence claim. Appellee argues that while he admitted negligence, he denied injury proximately resulting from his negligence. Hence, appellee claims that when the jury returned a verdict in favor of appellants but found that no injuries had been suffered, an essential element of appellants' negligence claim was missing, and that judgment should have been entered in appellee's favor. Appellee cites *Younce v. Baker* (1966), 9 Ohio App.2d 259, 38 O.O.2d 316, 224 N.E.2d 144, in support of his position in this regard. We note that appellants have not responded to this argument.

The second cross-assignment of error is related to the first cross-assignment. Appellee argues that since appellants did not establish their claim for negligence, appellee was prejudiced by the trial court's refusal to give to the jury a verdict form in favor of the defendant. Appellee cites *Haines v. Cleveland Ry. Co.* (1943), 141 Ohio St. 523, 26 O.O. 110, 49 N.E.2d 172, and *Appleton v. Matthews* (1968), 16 Ohio Misc. 130, 45 O.O.2d 90, 238 N.E.2d 846, and argues that a submission of verdict forms in favor of a plaintiff and a defendant is appropriate where the defendant has conceded negligence and admits only minor and inconsequential injuries.

██ Because, as cross-appellant concedes, the grounds for both assigned errors are substantially similar, we elect to treat them together. Before trial, cross-appellant conceded liability for the vehicle collision but denied causing the injury complained of. Because appellant Eugene Wargo's injuries were not minor and inconsequential as in *Haines, supra,* the trial court did not err in submitting a plaintiff's verdict form to the jury. However, as the court in *Younce, supra,* correctly stated:

██ "Where a defendant admits negligence proximately causing a traffic collision with plaintiff but denies injury, and the jury, upon adequate evidence,

returns the single form of verdict submitted to it finding for the plaintiff, but stating plaintiff's damages to be none, judgment for the defendant is proper."

 This statement recognizes the established notion that an admission of the breach of a duty is only one of the elements of a negligence action. Once a jury finds that no damages have proximately resulted from said breach, a plaintiff's action has failed, and a judgment for the defendant is the appropriate mechanism for recording this. Hence, appellee's cross-appeal is well taken and his first cross-assignment of error is found to be with merit.

The judgment of the trial court is hereby affirmed in part and reversed in part, and this matter is remanded to the trial court with instructions to issue judgment in favor of appellee/cross-appellant.

*Judgment accordingly.*

Cox and VUKOVICH, JJ., concur.