OPINION
On February 5, 1999, Petitioner-Appellee Melissa Campbell filed petitions for adoption of her stepdaughters, Wendy Michelle and Shawna Lynne Campbell. The children's natural parents are Ronda and Roland Campbell, who were divorced on June 30, 1993. It appears from the divorce decree that there were dependency proceedings pending in the Juvenile Court at the time of the divorce, so neither party was awarded custody at that time. One year later, Roland was awarded custody of both Wendy and Shawna. At or near the time Roland was awarded custody, Ronda Campbell was awarded supervised visitation and ordered to pay child support for Wendy and Shawna at $15 per week per child.
When the petitions for adoption were filed, the Probate Court scheduled a hearing on the petitions and sent notice to Ronda as the children's natural mother. This original notice informed Ronda that the petitioner had alleged Ronda's consent for the adoption was not necessary due to her failure to support the children. On June 23, 1999, Ronda filed objections to the stepparent adoption. Subsequently, the hearing was rescheduled for October 4, 1999 and the parties were notified. These notices simply stated that a hearing was to be held on the petition for adoption, but did not make any further specifications.
At the hearing, testimony was heard from both natural parents and the stepmother. Ronda admitted at the hearing that she has never paid support for either of these children since she was ordered to do so by the Juvenile Court. She further testified that in the year prior to filing of the adoption petition, she had some supervised visits with the children at Erma's House (a location established as a site for court-ordered supervised visitation to occur) and a visit at her attorney's office at which time she took the children to Burger King. She testified that she brought gifts each time she visited the children, and particularly brought Christmas gifts to the Burger King visit. The Christmas gifts consisted of a sweatshirt and toy for each of them, and a pair of shoes for Shawna.
Ronda further testified that she was employed throughout the entire year preceding the filing of the adoption petition. Over a fifteen-month period, she grossed just over $17,000. From this amount, she had deductions for medical insurance and 401(k) contributions. Additionally, she has two children residing with her, a sixteen-year old and a three-year old for whom she pays $50 per week in child care. There was no further testimony offered regarding Ronda's finances.
Following this testimony regarding failure to support, the judge announced his finding from the bench that "the natural mother has not made any support payments and, therefore, the Petition should be granted." Although the attorneys discussed a meeting between the judge and the children to be held in chambers, no further testimony was taken at the hearing. On the same day, the court filed an entry finding that the consent of the natural mother was not required and that it was in the best interest of the minor children to be adopted.
Ronda appeals from this decision raising the following assignments of error:
 The probate court abused its discretion in finding adoption [sic] to be in the children's best interest without affording Ronda Campbell a mandatory hearing notice or a mandatory hearing to determine best interest.
 The probate court abused its discretion in determining that Ronda Campbell failed to contribute to her children's support and maintenance and that such failure was unjustified.
 The court misapplied the burden of proof with respect to its determination of unjustified failure to maintain and support.
 I
We will first address the second and third assignments of error pertaining to the requirement of Ronda's consent to the adoption. R.C. 3107.06 provides that in order for a petition for adoption to be granted, consent must be obtained from the natural parents unless consent is not required under R.C. 3107.07. Consent is not required of the following individual:
 A parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.
R.C. 3107.07(A). The adoption petition alleged that Ronda unjustifiably failed to support her children for the year preceding the adoption petition. Ronda denies this allegation, maintaining that she provided some support for her children, and alternatively, any failure to support was justifiable.
The Supreme Court has held that the petitioner for the adoption has the burden to prove by clear and convincing evidence that the natural parent has failed to support the child for one year prior to the petition, and that this failure was unjustifiable. In re Adoption of Masa (1986), 23 Ohio St.3d 163, paragraph one of the syllabus. Once the petitioner has presented evidence of failure to support for the requisite one-year period, the natural parent has the burden to go forward with evidence that this non-support was justified. In re Adoption of Bovett (1987),33 Ohio St.3d 102, paragraph two of the syllabus. However, the burden of proof never shifts from the petitioner. Id. If the natural parent presents evidence indicating that the failure to support was justified, the petitioner must then prove by clear and convincing evidence that it was unjustified. Id.
The probate court's determination as to whether there is a non-justifiable failure to support will not be disturbed unless it is against the manifest weight of the evidence. Matter of theAdoption of Aiken (Mar. 30, 1992), Montgomery App. No. 12522, unreported, p. 5. A decision is not against the manifest weight of the evidence if it is supported by competent and credible evidence sufficient to satisfy the burden of proof. Myers v. Garson (1993),66 Ohio St.3d 610, 616. Some deference should be given to the trial court's factual findings as that court is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id.
Both parties cited numerous cases addressing the issue of what constitutes sufficient support for a natural parent to maintain her right to withhold consent to the adoption. One consistent theme exists throughout all of these cases: meager contributions to a child's support and maintenance have been held to require a parent's consent, but mere gifts and other incidentals have not. See, In re Adoption of Taylor (March 22, 1993), Brown App. No. CA92-07-013, unreported, p. 3. When a parent has contributed even small amounts of court-ordered monetary support, courts have overwhelmingly held this is sufficient to require a parent's consent. See, e.g., Vecchi v. Thomas (1990),67 Ohio App.3d 688 (holding child support payments of $130 for an entire year was sufficient to require consent of the natural parent for adoption); Celestino v. Schneider (1992), 84 Ohio App.3d 192
(finding one payment of child support demonstrated parent did not wholly fail to provide for support and maintenance of the children); In re Adoption of Hale (July 22, 1988), Lake App. No. 12-238, unreported (holding one child support payment of $50 adequate to require consent even though it was less than one ordered payment). Additionally, in-kind contributions to support and maintenance, such as food, clothing and insurance have also been held to require the consent of the natural parent. See, e.g., In re Adoption of Pinkava v. Sieja (Jan. 13, 1989), Lucas App. No. L-88-034, unreported (determining that provision of clothes, toys and meals during bi-weekly visits does not meet the standard of non-support, and thus consent is required); In Matterof Adoption of Mohr v. Frost (Mar. 25, 1988), Lucas App. No. CIV A L-87-199, unreported (finding that provision of medical insurance and clothes and food during regularly exercised visits was sufficient to require consent); In Matter of Adoption of Huffman
(Aug. 29, 1986), Mercer App. No. 10-85-4, unreported (upholding trial court's finding that provision of food, room and board during weekend visitations required consent to adoption).
On the other hand, several cases have held that supplying gifts and other nonessential items are not considered support or maintenance for purposes of R.C. 3107.07(A). In a Tenth District case, the court held that the purchase of toys and clothes valuing approximately $133 did not constitute support or maintenance for the child. In re Adoption of Strawser (1987), 36 Ohio App.3d 232, paragraph one of the syllabus. The mother testified that the items had no real value of support since the child already had sufficient toys and clothes. Id. at 234. Accordingly, the court held that consent of the father was not required for the adoption.Id. at 235. Two other courts held that Christmas gifts and birthday gifts of minimal value were insufficient to constitute support or maintenance for purposes of requiring consent. In reAdoption of Labo (1988), 47 Ohio App.3d 57, 60; Taylor, supra. See, also, In Matter of Adoption of Dues (Aug. 29, 1991), Montgomery App. No. 12112, unreported, p. 3 (finding clothes and a Christmas toy insufficient to constitute support or maintenance). Similarly, cash given directly to the child was held to constitute a gift and not sufficient to require consent of the natural parent for adoption. In Matter of Adoption of McCarthy (Jan. 17, 1992), Lucas App. No. L-91-199, unreported, p. 3.
In the present case, Ronda admitted she did not make any child support payments from the time she was ordered to pay child support by the Juvenile Court. She testified that she brought gifts to the children each time she visited, though she did not have many visits. Additionally, she brought Christmas gifts and bought them a meal at Burger King during one visit. The trial court found that these gifts and one meal at Burger King were insufficient to constitute support and maintenance as contemplated in R.C. 3107.07(A). Based on the above case law, we find that the decision that Ronda failed to support her children was not against the manifest weight of the evidence.
In addition, the petitioners must prove by clear and convincing evidence that this failure to support was unjustified. Although Ronda had the burden to present evidence that her failure to support was justified, the burden of proof never shifts from the petitioner for adoption. Bovett, supra. Ronda presented evidence that she grossed over $17000 for the fifteen month period preceding the filing of the adoption petition. From this income, she supported two children who reside with her, including $50 per week in child care. Additionally, she contributed to a 401(k) plan. The probate court determined, based on this testimony, that Ronda's failure to support was not justified.
The determination of whether a failure to support was unjustifiable will not be disturbed unless it is against the manifest weight of the evidence. Bovett, supra, at paragraph four of the syllabus. We do not agree that the trial court misapplied the burden of proof in making this finding. Although Ronda may not have been financially capable of making her entire court-ordered support payments throughout the year, the evidence does not demonstrate that her total failure to contribute to her daughters' support and maintenance was justified.
Based on the foregoing, the trial court's decision finding that Ronda unjustifiably failed to support her daughters for at least a year prior to the filing of the adoption petition is not against the manifest weight of the evidence. Accordingly, Ronda's second and third assignments of error are overruled.
 II
In her first assignment of error, Ronda claims that it was error for the trial court to find the adoption in the children's best interest without giving notice of or holding a best interest hearing. We agree. R.C. 3107.14(C) provides that the trial court must make a determination regarding consent and that the adoption is in the best interest of the child before issuing a final decree of adoption. Thus, both the consent phase and the best interest phase must be completed even if the court determines that consent of the natural parent is not required. In re Adoption of Jordan
(1991), 72 Ohio App.3d 638, 645.
In this regard, R.C. 3107.11(A)(3) requires a court to give notice of time and place of a best-interest hearing to a parent whose consent is not required for the adoption pursuant to R.C.3107.07(A). In explaining the reasoning for this requirement, one court stated, "[i]t is not difficult to imagine a scenario where a natural parent, even though he or she could not bar the adoption by withholding consent, could offer evidence of probative value that the adoption proposed would not be in his or her child's best interest." In re Adoption of Jorgenson (1986), 33 Ohio App.3d 207,209-210. Since it is within the realm of possibility that the adoption is not in the best interest of the children, a best-interest hearing must be held and Ronda must be given notice of such hearing. See, Jordan, supra, at 646.
This is not to say that the court is required to conduct two separate hearings in all cases. The statutory language only provides that two separate determinations must be made regarding consent and best interest. Taylor, supra, at p. 4. As long as notice is given and both separate issues are litigated, it is not error for the court to combine these issues into one hearing.Id.; In Matter of Adoption of Murphy (Nov. 22, 1996), Licking App. No. 96-CA-5, unreported, p. 3. However, error has been found when the trial court failed to give proper notice or to hear testimony regarding best interest before issuing a final decree of adoption.
First, the non-consenting parent must be given proper notice of a best interest hearing. The notices sent to Ronda provided that a hearing would be held on the petition for adoption, but did not define specifically what would be addressed in the hearing. Although the notice could encompass best interest, it did not specifically state that would be addressed. In In re Adoption ofWagner, the court found that receiving a notice stating "Hearing on Objection to Petition for Adoption," could potentially encompass a best interest hearing. (Dec. 31, 1997), Ashtabula App. No. 97-A-0010, unreported, p. 8. However, if the court never proceeds on the issue of best interest at the hearing, the parent is not given the opportunity to litigate the best interest of the child. Id. Further, if no evidence is presented relating to whether the adoption is in the best interest of the children, the court cannot simply make a finding that the adoption is in the children's best interest. Jordan, supra, at 646.
In the present case, all evidence presented at the hearing was directed toward Ronda's unjustified failure to support her daughters. There was absolutely no testimony given regarding the best interest of Wendy and Shawna. From the bench, the court stated: "the natural mother has not made any support payments and, therefore, the Petition should be granted." In the entry filed later that day, the trial court made a finding that the adoption was in the best interest of the children. After reviewing the record, there was clearly no basis for this finding.
Accordingly, we sustain Ronda's first assignment of error and find that the trial court erred in failing to hold a best interest hearing before issuing a final decree of adoption. Judgment of the trial court that Ronda's consent to the adoption is not required is affirmed. However, judgment that the adoption is in the best interest of the children is reversed and remanded for a hearing exclusively on this issue.
 ______________________ BROGAN, J.
WOLFF, J., and FAIN, J., concur.