Appellants Veronica Stull (f.k.a. Myers), Jonas Bailey, and Mary Baker appeal the decision of the Tuscarawas County Court of Common Pleas, Juvenile Division, following a grant of permanent custody to Appellee Tuscarawas County Job and Family Services. The relevant facts leading to this appeal are as follows. Stull and Bailey are the parents of Melina Bailey, a minor child who was taken into the temporary custody of Tuscarawas County Job and Family Services ("TCJFS") on January 3, 2000, following a domestic altercation between the parents. The following day, TCJFS filed a complaint in the trial court alleging that Melina and her half-brother Damian Myers were neglected and dependent. On February 2, 2000, Stull entered admissions to an amended complaint, stipulating that Melina and Damien were neglected and dependent. (Bailey had not at that point established paternity. He was later added as a party when paternity testing results showed him to be Melina's biological father.) TCJFS prepared and filed case plans for Stull and Bailey, including drug testing for both parents. Due in part to TCJFS's dissatisfaction with the progress of the drug treatment, the court suspended visitation in April 2000. Thereafter, on May 24, 2000, TCJFS filed a motion for permanent custody with the trial court. Meanwhile, Appellant Baker, maternal grandmother of Melina, filed to obtain party status and an order for temporary custody of Melina on January 19, 2000. However, TCJFS completed a home study on her residence and, in conjunction with a recommendation by the guardian ad litem, requested that the court not place Melina with Baker. The magistrate followed said recommendations, and Baker's objections to the magistrate's decision were denied by the trial court judge on May 19, 2000. Baker again sought party status and custody, which the magistrate denied on September 12, 2000. Baker filed an objection thereto, which the trial judge addressed as part of the permanent custody proceeding. On September 22, 2000, the trial judge heard evidence on the permanent custody motion. Pursuant to a judgment entry filed October 30, 2000, TCJFS was granted permanent custody of Melina. The court further overruled Baker's objection to the magistrate's decision denying her request to be made a party to the case. Appellant Stull, with Bailey joining, herein raises the following five Assignments of Error:
 I. A THOROUGH REVIEW OF THE RECORD IN THIS CASE REVEALS THE EVIDENCE DOES NOT JUSTIFY A GRANTING OF PERMANENT CUSTODY OF MELINA BAILEY AND DAMIEN MYERS TO THE TUSCARAWAS COUNTY JOBS AND FAMILY SERVICES.
 II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR REPEATEDLY ADMITTED (SIC) EVIDENCE OF THE RESULTS OF DRUG SCREENS.
 III. THE TRIAL COURT ERRED BY CONCLUDING THAT THERE WAS CLEAR AND CONVINCING EVIDENCE THAT IT WAS IN THE BEST INTEREST OF THE MINOR CHILDREN OF THE APPELLANTS TO BE PLACED IN THE CUSTODY OF THE TUSCARAWAS COUNTY DEPARTMENT OF HUMAN SERVICES AND FAILED TO CONSIDER THE FACTORS SET FORTH IN REVISED CODE 2151.414(B) AND (D).
 IV. THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR PERMANENT CUSTODY AND ABUSED ITS DISCRETION IN SUSTAINING THE MOTION FOR PERMANENT CUSTODY OF THE TUSCARAWAS COUNTY DEPARTMENT OF HUMAN SERVICES IN THAT THE PROCEDURES OF OHIO REVISED CODE 2151.414(D) WERE NOT FOLLOWED.
 V. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN GRANTING PERMANENT CUSTODY OF APPELLANT'S CHILDREN WHERE THERE WAS A SUITABLE RELATIVE WILLING AND CAPABLE OF ASSUMING CUSTODY OF APPELLANT'S CHILDREN.
Appellant Baker separately raises the following three Assignments of Error:
 I. THE TRIAL COURT ABUSED IT'S (SIC) DISCRETION IN OVERRULING AND DENYING APPELLANT'S, MARY BAKER, MOTION TO BE A DESIGNATED PARTY.
 II. THE TRIAL COURT ERRED IN FAILING TO HAVE AN EVIDENTIARY HEARING ON APPELLANT'S MOTION FOR LEGAL CUSTODY.
 III. THE JUDGMENT OF THE TRIAL COURT IS AGAINST THE WEIGHT OF THE EVIDENCE AND THE LAW.
 Appeal by Veronica Stull I and III
In both her First and Third Assignments of Error, Stull essentially contends that the award of permanent custody in this matter is unsupported by the manifest weight of the evidence. We disagree. As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279, 281. It is based upon this standard that we review Appellant Stull's First and Third Assignments of Error. The relevant statute, R.C. 2151.414, provides in part: (B)(2) With respect to a motion made pursuant to division (D)(2) of section 2151.413 of the Revised Code, the court shall grant permanent custody of the child to the movant if the court determines in accordance with division (E) of this section that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of this section that permanent custody is in the child's best interest.
A review of the record on appeal indicates the following case plan requirements in regard to Stull: (1) to obtain a drug and alcohol assessment and follow corresponding recommendations; (2) to obtain and pass random drug screens; (3) to participate in parental education; (4) to enroll in an intensive parenting program through Personal and Family Counseling Services; and (5) to engage in counseling for issues from her own childhood. Counsel for TCJFS questioned case manager Karl Hoop on the developments under the above case plan, essentially in a reverse order fashion. Hoop testified that he provided Stull with the option of pursuing the counseling referenced in component number five, above, at either Community Mental Healthcare or Personal and Family Counseling. However, Hoop received no documentation whatsoever that Stull had initiated said counseling. He further testified that although Stull had enrolled into an intensive parenting program, she failed to complete it, as well as the "TOTS" parenting program. Stull later admitted during her testimony that she failed to complete the aforesaid case plan components. Stull fared no better in regard to the drug concerns in the case plan. She testified, over objection, that of the six or seven drug screens attempted during the course of the TCJFS involvement, only one was determined to be "clean." In regard to the overall case plan, the transcript reveals Stull's general rationalization for her behavior was either a claimed lack of understanding of the requirements, or a denial of a necessity therefor. Turning to the case plan requirements for Appellant Bailey, Hoop testified that Bailey was made part of the plan on April 7, 2000. The case plan required him to: (1) complete an intensive parenting program; (2) obtain a psychological evaluation; (3) obtain a domestic violence assessment and any recommend counseling; (4) obtain a drug and alcohol assessment and follow corresponding recommendations; and (5) submit to random drug screens. The testimony of Karl Hoop again reveals no documentation that Bailey had completed the various portions of his case plan, despite Bailey's unsuccessful drug screen. Bailey sought to attribute these developments to his job schedule, as further revealed in the following exchange during questioning by the guardian ad litem:
 Q. Okay, do you ever recall taking a Monday off to go to a meeting with someone, either your attorney to discuss a Court case or a Court hearing?
A. I may have, I'm not, I don't recall.
 Q. Okay, but you were able to take off some time from your job to meet certain appointments?
 A. Very rare, I mean I've almost, I have lost my job twice for taking off over ridiculous and uncalled for days and I've got it back and I can't just take days off anymore. I was told I will lose my job and I can't afford it.
Tr. at 96.
Upon review, the record, as a whole, provides ample competent and credible evidence upon which the trial court could base its decision pursuant to statute. The trial court's decision to grant permanent custody to TCJFS was not against the manifest weight of the evidence. Stull's First and Third Assignments of Error are overruled.
 II.
In her Second Assignment of Error, Stull argues that the trial court violated her privileged communications with the medical providers conducting her drug screens. We disagree. In support of her position, Stull directs us to In re Wieland (2000), 89 Ohio St.3d 535, which held at the syllabus: In the absence of a specific statutory waiver or exception, the testimonial privileges established under R.C. 2317.02(B)(1) (concerning communications between a physician and patient), R.C. 4732.19
(concerning communications between a licensed psychologist and client), and R.C. 2317.02(G) (concerning communications between a licensed counselor or licensed social worker and client) are applicable to communications made by a parent in the course of treatment ordered as part of a reunification plan in an action for dependency and neglect.
An appeal from the interpretation and application of R.C. 2317.02(B) is recognized as reviewable as a matter involving an issue of law. See Ward v. Johnson's Indus. Caterers, Inc. (June 25, 1998), Franklin App. No. 97APE11-1531, unreported; Porter v. Litigation Management, Inc., (May 11, 2000), Cuyahoga App. No. 76159, unreported. "Because the privilege is entirely statutory and in derogation of the common law, it must be strictly construed against the party seeking to assert it." Wargo v. Buck (1997), 123 Ohio App.3d 110, 120, citing Ohio State Med. Bd. v. Miller (1989), 44 Ohio St.3d 136, 140. R.C. 2151.3514(B), effective March 18, 1999, reads as follows: If the juvenile court issues an order of temporary custody or protective supervision under division (A) of section2151.353 of the Revised Code with respect to a child adjudicated to be an abused, neglected, or dependent child and the alcohol or other drug addiction of a parent or other caregiver of the child was the basis for the adjudication of abuse, neglect, or dependency, the court shall issue an order requiring the parent or other caregiver to submit to an assessment and, if needed, treatment from an alcohol and drug addiction program certified by the department of alcohol and drug addiction services. The court may order the parent or other caregiver to submit to alcohol or other drug testing during, after, or both during and after, the treatment. The court shall send any order issued pursuant to this division to the public children services agency that serves the county in which the court is located for use as described in section 340.15 of the Revised Code.
The facts of Wieland indicate that the Montgomery County Children Services Board filed its permanent custody motions regarding the three children involved in 1997 and 1998, and on January 29, 1999, the juvenile court ordered that certain substance abuse records should be disclosed as requested, despite the mother's objection that she had not waived the physician-patient privilege. Id. at 536. These events predated R.C.2151.3514(B), which is not discussed in Wieland. In the case sub judice, the drug screens were accomplished pursuant to the case plan, rather than a direct court order. However, in strictly construing the aforecited privilege-related statutes against Stull, we hold that R.C. 2151.3514(B) manifests an intent by the General Assembly to remove the privilege from a parent or caregiver's drug or alcohol testing results obtained under the aegis of a dependency, neglect, or abuse action pursuant to R.C.2151.353. Thus, the trial court did not violate Stull's privileges under R.C. 2317.02 under these facts. Stull's Second Assignment of Error is overruled.
 V and V
In her Fourth Assignment of Error, appellant contends that the trial court failed to adhere to the requirements of R.C. 2151.414(D). We disagree. The statutory section at issue reads as follows: (D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
* * *
Stull essentially argues that the court ignored R.C. 2151.414(D)(4) ("[t]he child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency") in its refusal to recognize paternal grandparents Donald and Vickie Bailey as a resource for permanent placement. As this argument closely resembles the basis of the Fifth Assignment of Error, we will simultaneously address both. Both TCJFS and the guardian ad litem urge us to adopt the holding of In re Perez (1999), 135 Ohio App.3d 494,496, wherein the court held that a trial court erred in granting legal custody to an uncle and aunt when no motion for legal custody had been filed by them prior to the permanent custody hearing, referencing R.C.2151.353(A)(3). The language of that opinion aptly corresponds with the situation before the trial court below: [The agency] LCCS has argued that the trial court erred when it granted legal custody of the children to [uncle and aunt] in the absence of a prior motion for legal custody. LCCS has asserted that it would be unreasonable to expect a child placement agency seeking permanent custody to prepare its case against all potential relatives who might appear on the date of the hearing and request legal custody. It has concluded that notice is mandated by R.C.2151.353 for that reason. This court agrees. Id. at 496.
We find Perez applicable herein, and upon review of the record and transcript, find the trial court properly considered the "best interest" factors pursuant to R.C. 2151.414(D), including pertinent home studies. Any alleged deficiency in said consideration is attributable not to the court or TCJFS, but to the lack of procedural formality and statutory compliance by the paternal grandparents. Stull's Fourth and Fifth Assignments of Error are overruled.
 Appeal by Mary Baker I.
In her First Assignment of Error, Appellant Baker argues that the trial court erred in denying her motion to be named as a party to the action. We disagree. Juv.R. 2(X) states as follows: "Party" means a child who is the subject of a juvenile court proceeding, the child's spouse, if any, the child's parent or parents, or if the parent of a child is a child, the parent of that parent, in appropriate cases, the child's custodian, guardian, or guardian ad litem, the state, and any other person specifically designated by the court. When reviewing an order which denies a motion to intervene, the issue is whether the trial court abused its discretion. Peterman v. Village of Pataskala (1997), 122 Ohio App.3d 758
. In order to find an abuse of discretion, we must determine whether the trial court' decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217. The record reveals that at the time the time the motion for party status was made, the trial court had already found Baker's home inappropriate for placement. Nonetheless, Baker cites the following language from Chief Justice Celebrezze's concurring opinion in In re Schmidt (1986), 25 Ohio St.3d 331: Intervention by grandparents in a permanent custody proceeding is appropriate where the grandparents have a legal right to or a legally protectable interest in custody or visitation with their grandchild, where the grandparents have stood in loco parentis to their grandchild, or where the grandparents have exercised significant parental control over, or assumed parental duties for the benefit of, their grandchild. Where any of these circumstances are present, it is my view that a denial of the grandparents' motion to intervene would constitute an abuse of the juvenile court's discretion. Id. at 338.
Although Baker posits that as maternal grandmother, she was "no stranger in this situation" (Appellant's Brief at 5), her arguments that her role in Melina's life rose to the level of in loco parentis are insufficient for holding that the trial court abused its discretion in this regard. Baker's First Assignment of Error is overruled.
 II.
In her Second Assignment of Error, Baker alleges that the trial court erred in declining to hold an evidentiary hearing on her motion for legal custody. We disagree. In In re Poling (1992), 64 Ohio St.3d 211, paragraph two of syllabus, the Ohio Supreme Court held that when a juvenile court exercises jurisdiction over custody matters pursuant to R.C. 2151.23, it must do so in accordance with R.C. 3109.04. Thus, pursuant to R.C. 3109.04(A), the trial court is to conduct a hearing as follows: [I]n any proceeding pertaining to the allocation of parental rights and responsibilities for the care of the child, upon hearing the testimony of either or both of the parents * * * the court shall allocate the parental rights and responsibilities for the care of the minor children * * *.
In the matter sub judice, even though the above statute makes no mention of testimony by a grandparent who has not been named a party, the trial court gave Baker the opportunity at the dispositional hearing of March 29, 2000, to present evidence concerning the appropriateness of her home for placement of Melina. Nonetheless, pursuant to a magistrate's decision dated April 5, 2000 and a judgment entry dated May 19, 2000, the court determined that Baker's home was not appropriate for Melina. Appellant Baker cites no authority for her asserted right to essentially re-argue most or all of these same issues. Having reviewed the record, we find no merit in Baker's position. Baker's Second Assignment of Error is overruled.
 III.
In her Third Assignment of Error, Baker challenges the trial court's decision as being against the manifest weight of the evidence. However, we decline to address the merits of this argument based on lack of appellate standing. In In re Stanley (Oct. 11, 2000), Summit App. Nos. 20128, 20131, 20132, unreported, the Ninth District Court of Appeals indicated the following in addressing a similar question: Unless a person is a party in the lower court case, the individual has no standing to appeal. See Whiteside, Ohio Appellate Practice (1996 Edition) 30, Section1.27. Because the grandparents were never made parties below, they have no standing to appeal. "Appeal lies only on behalf of a party aggrieved by the final order appealed from; appeals are not allowed for the purpose of settling abstract questions, but only to correct errors injuriously affecting the appellant." (Internal citations omitted.) In re Hiatt (1993), 86 Ohio App.3d 716, 721. Id. at 3.
Thus, although we have seen fit to speak regarding Baker's procedural-based First and Second Assignments of Error, we find the rationale of Stanley applicable herein. We therefore do not reach the merits of Baker's Third Assignment of Error. For the reasons stated in the foregoing opinion, the decision of the Court of Common Pleas, Tuscarawas County, Juvenile Division, is hereby affirmed.
 _____________ Wise, J.
Gwin, P.J., and Hoffman, J., concur.